NON-CONFIDENTIAL VERSION

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| POWER STEEL CO., LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>REBAR TRADE ACTION COALITION,<br><br>    Defendant-Intervenor. | Before: Hon. Jane A. Restani,<br>    Senior Judge<br><br>Court No. 20-03771<br><br>__NON-CONFIDENTIAL VERSION__<br><br>Business Proprietary Information Removed from Pages 4-6, 10, 11, and 14-19 |

<u>**REBAR TRADE ACTION COALITION'S RESPONSE BRIEF**</u>

Alan H. Price, Esq.
John R. Shane, Esq.
Maureen E. Thorson, Esq.

WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to Rebar Trade Action Coalition*

**Dated: June 8, 2021**

Ct. No. 20-03771                                        NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 1

    A.      Deduction of Section 232 Duties from PSCO's U.S. Prices ....................... 1

    B.      Determination that PSCO Paid Section 232 Duties on All U.S. Sales
        Entered On or After March 23, 2018 ........................................................... 4

III.    SUMMARY OF ARGUMENT ........................................................................... 6

IV.     ARGUMENT ..................................................................................................... 7

    A.      Commerce's Treatment of Section 232 Duties as "United States
        Import Duties" Should Be Affirmed ............................................................ 7

    B.      Commerce Did Not Err in Deducting Section 232 Duties from All of
        PSCO's U.S. Sales Prices ......................................................................... 10

    C.      PSCO's Arguments Regarding its Responsiveness are Largely
        Beside the Point, and Otherwise Unconvincing ....................................... 12

    D.      Commerce Did Not Err in Its Analysis of PSCO's Contract and
        Emails ...................................................................................................... 15

    E.      Commerce Did Not Otherwise Err in its Analysis ................................... 18

V.      CONCLUSION ................................................................................................ 20

i

Ct. No. 20-03771

NON-CONFIDENTIAL VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
  No. 20-00015, slip op. 21-18 (Ct. Int'l Trade Feb. 17, 2021)...........................................6, 8, 9

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
  419 U.S. 281 (1974).......................................................................................................15

*Changzhou Trina Solar Energy Co. v. United States*,
  359 F. Supp. 3d 1329 (Ct. Int'l Trade 2019) ..................................................................14, 17

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938).......................................................................................................18

*Mid Continent Steel & Wire, Inc. v. United States*,
  940 F.3d 662 (Fed. Cir. 2019)..........................................................................................19

*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006).........................................................................................19

*Pastificio Lucio Garofalo, S.p.A. v. United States*,
  35 CIT 630, 783 F. Supp. 2d 1230 (2011) .........................................................................19

*QVD Food Co. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011).........................................................................................14, 17

*Siderca S.A.I.C. v. United States*,
  29 CIT 1030, 391 F. Supp. 2d 1353 (2005) ........................................................................19

*Wheatland Tube Co. v. United States*,
  495 F.3d 1355 (Fed. Cir. 2007).....................................................................................2, 3, 7, 8

**Statutes**

19 U.S.C. § 1505...................................................................................................................10, 12

19 U.S.C. § 1677a.......................................................................................................................1

19 U.S.C. § 1677a(c)(2)(A) ................................................................................................. *passim*

19 U.S.C. § 1677b(a)...................................................................................................................1

19 U.S.C. § 1677b(b)...................................................................................................................1

19 U.S.C. § 1677e.......................................................................................................................12

19 U.S.C. § 1677f-1(d)................................................................................................................1

Tariff Act of 1930......................................................................................................................1

## I.     INTRODUCTION

On behalf of the Rebar Trade Action Coalition ("RTAC"), we respectfully submit the following response to the March 25, 2021 opening brief filed by Power Steel Co., Ltd. ("PSCO"). *See* Mem. P. & A. in Supp. of Pl. Power Steel Co., Ltd. Rule 56.2 Mot. for J. on the Agency R. (Mar. 25, 2021), ECF No. 23 ("PSCO's Brief").

## II.    STATEMENT OF FACTS

Below, RTAC lays out pertinent legal and factual background regarding the issues raised in PSCO's appeal.

### A.     Deduction of Section 232 Duties from PSCO's U.S. Prices

This appeal concerns the first administrative review of the antidumping duty order on steel concrete reinforcing bar ("rebar") from Taiwan. The review covered a single respondent, PSCO. *See* Preliminary Decision Memorandum accompanying *Steel Concrete Reinforcing Bar from Taiwan*, 84 Fed. Reg. 68,884 (Dep't Commerce, Dec. 17, 2019) (prelim. results and partial rescission of antidumping duty admin. rev.; 2017-2018) at 1-2, P.R. 85 ("Preliminary IDM"). The period of review ("POR") extended from March 7, 2017 through September 30, 2018. *Id.* at 1. In March of 2018, during the POR, the President imposed 25% duties on Taiwanese imports of rebar pursuant to Section 232 of the Trade Expansion Act of 1962. *See, e.g.*, *id.* at 8.

The U.S. Department of Commerce ("Commerce") determines antidumping duty margins by comparing the prices at which companies sell subject goods in their home market against the prices that they charge in the United States. *See, e.g.*, 19 U.S.C. § 1677f-1(d); *see also id.* §§ 1677a, 1677b(a), 1677b(b). The Tariff Act of 1930 requires Commerce to make certain adjustments to home market and U.S. prices before comparing them. One such adjustment calls for U.S. prices to

be reduced by the amount of any "United States import duties" included in those prices. *Id*. § 1677a(c)(2)(A).

In reaching the preliminary results of the review at bar, Commerce considered whether to deduct Section 232 duties from PSCO's U.S. prices, pursuant to 19 U.S.C. § 1677a(c)(2)(A). Preliminary IDM at 8-10. Commerce looked to the decision of the Court of Appeals for the Federal Circuit ("CAFC") in *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007). In that case, the CAFC affirmed Commerce's determination that Section 201 safeguard duties are not "United States import duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A), but are instead a form of "special" duties that are akin to antidumping duties. *Wheatland Tube*, 495 F.3d at 1362-63. The CAFC also described factors relevant to consideration of whether particular tariffs constitute such special duties. These include whether the tariffs are (1) "remedial," (2) imposed based on findings of injury or threat of injury to a domestic industry, and (3) are temporary. *Id.* at 1362-63. The CAFC also stated that it was appropriate to take into account whether assessing both an antidumping duty and another duty on a good would constitute a double-remedy for "substantially overlapping" injuries. *Id.* at 1365.

Here, Commerce noted that Section 232 duties are imposed for national security purposes, rather than to remedy injury to a domestic industry. Preliminary IDM at 9-10. Commerce also noted that the President, in his declaration imposing the Section 232 duties, referred to them as "ordinary" customs duties that should be levied in addition to special duties such as antidumping duties. *Id.* at 10. Commerce concluded that the Section 232 duties were not akin to antidumping duties, but were instead "United States import duties" that are deductible from U.S. prices under 19 U.S.C. § 1677a(c)(2)(A). *Id.*

In its case brief, PSCO argued against Commerce's preliminary treatment of Section 232 duties. Letter from Harris Bricken to Sec'y Commerce, re: *Steel Concrete Reinforcing Bar from Taiwan: Case Brief of Power Steel Co., Ltd.* (Jan. 24, 2020) at 1-9, C.R. 92, P.R. 97 ("PSCO's Case Brief"). PSCO argued that *Wheatland Tube* counseled that Section 232 duties were not normal or ordinary customs duties that should be deducted from U.S. price, but special duties that should not be deducted. *Id.* PSCO first argued that Section 232 duties are "remedial" in the sense used in *Wheatland Tube*. *Id.* at 4-6. PSCO also argued that Section 232 duties are temporary, in the manner of antidumping or Section 201 duties. *Id.* at 6-8. Finally, PSCO argued that Section 232 duties are special duties because they are instituted by the Executive Branch through a delegation of authority, rather than directly by Congress. *Id.* at 8-9.

In its final results, Commerce continued to determine that Section 232 duties are deductible from U.S. prices under 19 U.S.C. § 1677a(c)(2)(A). *See* Issues and Decision Memorandum accompanying *Steel Concrete Reinforcing Bar from Taiwan*, 85 Fed. Reg. 63,505 (Dep't Commerce Oct. 8, 2020) (final results of antidumping duty admin. rev.; 2017-2018) at 10-13, P.R. 128 ("Final IDM"). The agency found that, unlike antidumping or Section 201 duties, Section 232 duties are not meant to remedy injury to a domestic industry. *Id.* at 11. Rather than being aimed at "protecting the bottom line of domestic producers," Section 232 duties are implemented for national security reasons, consistent with the text of the Trade Expansion Act of 1962. *Id.* at 11-12. Commerce also noted, as it had in the preliminary results, that in proclaiming the Section 232 duties, the President referred to them as "ordinary" duties that should be levied in addition to antidumping duties and other duties or charges. *Id.* at 13.

While PSCO argued that Section 232 duties are levied by the Executive Branch pursuant to a Congressional delegation of authority, Commerce disagreed that this meant that Section 232 duties

Business Proprietary Information
Has Been Deleted                    NON-CONFIDENTIAL VERSION

are not deductible from U.S. price. *Id.* Rather, because the duties are implemented for national security purposes, are not focused on remedying injury to a particular domestic industry, have no termination provision, and do not overlap with antidumping duties, Commerce concluded that they should be treated as ordinary customs duties for purposes of 19 U.S.C. § 1677a(c)(2)(A). *Id.*

**B.      Determination that PSCO Paid Section 232 Duties on All U.S. Sales Entered On or After March 23, 2018**

In its initial questionnaire responses, PSCO reported that it acted as the importer of record for the goods that it sold to the United States during the POR, and that it paid 232 duties on entries made on or after March 23, 2018, the date that the Section 232 duties were imposed. *See* Letter from Harris Moure to Sec'y Commerce, re: *Steel Concrete Reinforcing Bar from Taiwan: Section B and C Responses* (Mar. 14, 2019) at Section C, pp. 14 and 49, C.R. 12-19, P.R. 32-33 ("BCQR"). However, in its fourth supplemental questionnaire response, filed after the preliminary results of the review, PSCO claimed that it did not pay Section 232 duties on all of its imports of rebar that entered the U.S. market on or after March 23, 2018. *See* Letter from Harris Moure to Sec'y Commerce, re: *Steel Concrete Reinforcing Bar from Taiwan: 4th Supplemental Questionnaire Response* (Jan. 9, 2020) at 1-3, C.R. 86-91, P.R. 93 ("4th SQR"). Rather, PSCO claimed that its U.S. customer paid the Section 232 duties for certain imports. *Id.* In support of this claim, PSCO provided correspondence between itself and its customer, as well as a copy of a contract stating that [                                                    ], but with [

                                ]. *Id.* at Exhibits 4 and 5.

In its case brief, PSCO argued that while Commerce should not deduct Section 232 duties from its U.S. prices in any event, it particularly should not deduct them from post-March 22, 2018 sales for which PSCO claimed not to have paid Section 232 duties. PSCO's Case Brief at 10-12. PSCO argued that while it was the importer of record for these entries, the customer paid the

**Business Proprietary Information
Has Been Deleted**

Section 232 duties [                               ]. *Id.* at 10-11. PSCO further argued that its

accounting records confirmed that the company did not pay Section 232 duties for these entries.

*Id.* at 11 (citing 4th SQR at Exhibits 1 and 2).

      In the final results, Commerce continued to deduct Section 232 duties from the reported

U.S. prices for all of PSCO's sales of goods imported on or after March 23, 2018. Commerce

explained that the record showed that PSCO was the importer of record for all [        ]

entries/invoices corresponding to its post-March 22, 2018 U.S. sales during the POR, and that it

had reported paying Section 232 duties for all sales in its questionnaire responses filed prior to the

preliminary results. *See* Final IDM at 15; Memorandum from Myrna Lobo and Leo Ayala, re:

*Antidumping Duty Administrative Review of Steel Concrete Reinforcing Bar from Taiwan: Final*

*Results Margin Calculation for Power Steel Co., Ltd.* (Oct. 2, 2020) at 6-7, C.R. 98, P.R. 131

("Final Calculation Memo"). Commerce further noted that, to support its position that it did not

pay Section 232 duties for goods included on [     ] entries/invoices, PSCO had submitted a copy

of a contract between itself and its customer for the goods imported on those entries. Final

Calculation Memo at 7-8. Specifically, PSCO submitted a contract that contained the phrase

"{t}hese prices are including AD Duty 3.5% and import tax 25% paid by POWER STEEL CO.,

LTD.," but with a hand-written notation that [

      ]. *Id.* at 8; *see also* 4th SQR at Exhibit 5, p. 2. PSCO also submitted email

correspondence between itself and its customer regarding payment of the Section 232 duties for

these [     ] entries/invoices. *Id.*; *see also* Final IDM at 16.

      Commerce noted that the correspondence was fragmented and did not include the party

supposedly responsible for payment of the duties (*i.e.*, the ultimate consignee). Final Calculation

Memo at 8. Further, PSCO had not submitted any payment documentation showing the payment

**Business Proprietary Information**
                                                    **Has Been Deleted**

of the Section 232 duties by another party. *Id.* Accordingly, Commerce continued to deduct Section

232 duties from the prices that PSCO reported for all U.S. sales. *Id.*; *see also* Final IDM at 16.

## III.   <u>SUMMARY OF ARGUMENT</u>

The Court should affirm Commerce's determinations regarding the issues subject to

PSCO's appeal.

First, the Court should affirm Commerce's determination that Section 232 duties are

"United States import duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A), and thus deductible

from U.S. prices. Commerce explained and supported its conclusion to this effect, noting that

Section 232 duties are not imposed to remedy material injury to a U.S. industry. Final IDM at

12-13. Further, Commerce's decision is consistent with the recent decision of this Court in

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, No. 20-00015, slip op. 21-18

(Ct. Int'l Trade Feb. 17, 2021).

Second, the Court should affirm Commerce's determination to deduct Section 232 duties

from the prices for all of PSCO's reported U.S. sales that entered the U.S. market on or after

March 23, 2018. Prior to the preliminary results, PSCO consistently reported having paid Section

232 duties on all of the rebar it shipped to the U.S. market during the POR. And while it

subsequently claimed that another party paid the duties [                        ] for [      ]

entries, the documentation that PSCO provided did not establish the claim. Thus, Commerce acted

reasonably and with the support of substantial record evidence in deducting Section 232 duties

from the prices for all of PSCO's U.S. sales that entered the U.S. market on or after March 23,

2018.

## IV.   <u>ARGUMENT</u>

For the reasons discussed below, this Court should affirm the final results of Commerce's 2017-2018 administrative review of the antidumping duty order on Taiwanese rebar as to (1) deduction of Section 232 duties from PSCO's U.S. prices generally, and (2) Commerce's determination that PSCO incurred Section 232 duties on all U.S. sales.

### A.   <u>Commerce's Treatment of Section 232 Duties as "United States Import Duties" Should Be Affirmed</u>

As noted above, 19 U.S.C. § 1677a(c)(2)(A) calls upon Commerce to reduce a respondent company's U.S. prices by the amount of any "United States import duties" included in those prices. In determining whether a particular duty is deductible under this statutory provision, the courts have considered factors such as the remedial purpose of the duty, whether it has a set termination date, and whether its purpose overlaps with that of antidumping duties. *Wheatland Tube*, 495 F.3d at 1362-63, 1365.

Commerce determined here to treat Section 232 duties as "United States import duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A). Final IDM at 10-13. Commerce found that Section 232 duties "are not focused on remedying injury to a domestic industry" or, to quote the *Wheatland Tube* Court, "protecting the bottom line of domestic producers." *Id.* at 11. Rather, Section 232 duties are imposed for national security reasons. *Id.* at 11-12. Commerce also found that Section 232 duties are not imposed for a purpose that overlaps with that of antidumping duties. *Id.* at 12-13. Commerce noted that, in imposing the Section 232 duties, the President directed that they should be levied "in addition to" other duties, including antidumping duties, and referred to them as "ordinary" customs duties. *Id.* at 13.

PSCO challenges Commerce's decision to treat Section 232 duties as "United States import duties" as inconsistent with law. PSCO's Brief at 8-17. PSCO argues that Section 232 duties are not

ordinary U.S. customs duties, but special duties that are remedial and temporary in nature, and imposed pursuant to a Congressional delegation of authority to the Executive Branch. *Id.* at 9-17. PSCO faults Commerce for not having, in PSCO's view, appropriately applied the factors called out in *Wheatland Tube* in analyzing the treatment of Section 232 duties here. *Id.* at 10. PSCO therefore argues that Commerce's treatment of Section 232 duties should be remanded with instructions that the agency must treat the duties as non-deductible from U.S. price. *Id.* at 35.

PSCO's claims are unconvincing, and should be rejected by this Court, consistent with the Court's recent holding in *Borusan*. There, a Turkish producer and importer of circular welded pipe argued that Section 232 duties could not reasonably be treated as "United States import duties" because they are remedial and temporary in nature. *Borusan*, slip op. 21-18 at 11. The Court found otherwise, reasoning that the purpose behind the statutory deduction of "United States import duties" from U.S. prices is to obtain an ex-factory price that is comparable with the prices of goods in the home-market, which are not subject to import duties. *Id.* at 13. The Court found that, unlike Section 201 duties (which Commerce has previously found to be "special duties" that are not deductible from U.S. prices), Section 232 duties are not necessarily remedial in the manner of antidumping duties. *Id.* at 15. More importantly, the Court reasoned, double-counting does not result from treatment of Section 232 duties as "United States import duties." *Id.* at 15-17. While there is a "clear . . . interplay" between antidumping and Section 201 duties, there is no "requirement of complimentary treatment with normal unfair trade laws in Section 232." *Id.* The Court accordingly upheld Commerce's treatment of Section 232 duties as "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A). *Id.* at 17.

While PSCO acknowledges the existence of the *Borusan* decision, it claims that the case was wrongly decided. PSCO's Brief at 17. However, it provides no reasons for so believing, other than

its arguments that Section 232 duties are "remedial," "temporary," and set by the Executive pursuant to a delegation from Congress. *Id.* at 8-17. But as the Court has previously found, Section 232 duties are sufficiently dissimilar from antidumping duties that it is reasonable for Commerce to treat them as "United States import duties." *Borusan*, slip op. 21-18 at 15-17. Section 232 duties address a different problem than antidumping duties and, importantly, there is nothing within Section 232 or its legislative history that indicates that antidumping duties are to be considered when setting Section 232 duties, or that Section 232 duties are complementary to antidumping duties. *Id.* at 16. Indeed, the President referred to the Section 232 duties as "ordinary" customs duties when imposing them and stated that they were to be collected in addition to, and not in lieu of, antidumping duties. Final IDM at 13.

In its brief, PSCO argues that, like antidumping and Section 201 duties, Section 232 duties are imposed by the Executive Branch pursuant to a delegation from Congress. PSCO's Brief at 16. PSCO argues that this distinguishes Section 232 duties from "United States import duties," making it unlawful for Commerce to have treated them as such. *Id.* This particular claim was not addressed in *Borusan*, but the *Borusan* Court observed that there is no statutory definition of "United States import duties," and the phrase is "broad enough to include all import duties except antidumping duties . . . ." *Borusan*, slip op. 21-18 at 13, 17. Thus, the particular manner in which the duties are imposed does not compel Commerce to conclude that Section 232 duties are special duties that cannot be deducted from U.S. prices.

Rather, the salient question is whether Section 232 duties overlap so closely with antidumping duties that deducting them would result in the same policy concerns that have driven Commerce to treat Section 201 duties as non-deductible under 19 U.S.C. § 1677a(c)(2)(A). Here, and as indicated by the Court's decision in *Borusan*, Commerce reasonably concluded that Section 232 duties do

**Business Proprietary Information Has Been Deleted**

not overlap with antidumping duties in the manner of Section 201 duties, so that they are reasonably and lawfully treated as "United States import duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A). Final IDM at 13. PSCO's arguments to the contrary should be dismissed.

> **B.    Commerce Did Not Err in Deducting Section 232 Duties from All of PSCO's U.S. Sales Prices**

PSCO acted as the importer of record for entries of its rebar made on or after March 23, 2018, the date on which Section 232 duties were imposed. 4th SQR at 2. Prior to the preliminary results of the review, PSCO reported having paid Section 232 duties on all of these entries. Final IDM at 15. After the preliminary results were issued, however, and in response to a request that it provide entry-specific information on the value of the duties paid, PSCO claimed not to have paid duties on [      ] of the entries. *See id.* at 15-16; *see also* 4th SQR at 1-3. Rather, it stated that its customer for these entries had paid the duties [                    ], although PSCO continued to act as the importer of record. 4th SQR at 3. In support of its claim, PSCO provided certain email correspondence with the customer, as well as a copy of a contract that stated that the sales would be priced inclusive of import duties, which PSCO would pay. *Id.* at Exhibits 4 and 5; *see also* Final Calculation Memo at 7-8. However, on the copy of the contract that PSCO submitted, [

              ]. 4th SQR at Exhibit 5, p. 2. There was no indication of who made the hand-written notation, or when, as it was not [                    ]. *Id.*

In its final results, Commerce found this documentation insufficient to establish that PSCO was not the payor of the Section 232 duties for the relevant entries. Final IDM at 15-16; *see also* Final Calculation Memo at 7-8. Commerce observed that PSCO was the importer of record for all entries of its goods during the POR. Final IDM at 15. Under 19 U.S.C. § 1505, the importer of record is the party responsible for paying duties owed on entries of merchandise imported into the

**Business Proprietary Information Has Been Deleted**

United States, a fact that PSCO characterizes itself as having "categorically acknowledged." PSCO's Brief at 19. Indeed, PSCO initially reported paying the Section 232 duties for all of the entries made on or after March 23, 2018. Final IDM at 15.

Further, with respect to the customer for the relevant entries, there was no indication [

] – only a handwritten note on a clause that otherwise called for duty-inclusive pricing, and for PSCO to pay the duties. Final Calculation Memo at 8; *see also* 4th SQR at Exhibit 5. Further, the information that PSCO provided did not include specific payment documentation, such as cancelled checks, wire transfers, or bank statements, demonstrating the payment of duties to [          ] by a party other than PSCO, and application of those amounts to the entries at issue. Final Calculation Memo at 8. Indeed, the documentation included [

]. 4th SQR at Exhibit 4.

PSCO challenges Commerce's determination to deduct Section 232 duties from the U.S. prices reported for the goods shipped on the relevant entries, arguing that it was arbitrary and unsupported by substantial record evidence. PSCO's Brief at 18. PSCO advances three main grounds for its claim. *Id.* at 18-34. First, PSCO argues that its reporting was fully responsive to Commerce's requests, and that it cannot be faulted for failing to provide information that Commerce did not request. *Id.* at 18-22. Second, PSCO argues that Commerce erred in its analysis of the contract and emails that PSCO provided to support its claim. *Id.* at 25-31. Finally, PSCO argues that it submitted sufficient data to show that it did not pay Section 232 duties on the relevant entries, and that, likewise, the record does not support Commerce's conclusion that it did pay such duties. *Id.* at 22-23 and 32-34. As discussed below, these arguments are unavailing.

**C.      PSCO's Arguments Regarding its Responsiveness are Largely Beside the Point, and Otherwise Unconvincing**

PSCO begins by arguing that it fully complied with Commerce's information requests and cannot be faulted for not having provided documentation that was not requested. *Id.* at 18-22. PSCO claims that the agency's post-preliminary request for the company to revise its initial reporting to reflect entry-specific duty payments suggests Commerce's understanding that PSCO's position as the importer of record did not, by itself, establish that PSCO paid Section 232 duties on all of its entries. *Id.* at 19-20. PSCO similarly argues that it cannot be faulted for not having provided entry-specific payment information prior to Commerce's request for such information, and that PSCO can likewise not be faulted for not providing duty-payment information when Commerce did not specifically request it. *Id.* at 21-22.

These arguments are largely, if not entirely, beside the point. Commerce did not find that PSCO failed to respond to the agency's information requests, and did not apply either "the facts available" or an "adverse inference" pursuant to 19 U.S.C. § 1677e. Rather, Commerce noted that PSCO identified itself as the importer of record for all of its shipments. Final IDM at 15. This meant that PSCO was obligated by law to pay duties owed at importation, including 232 duties, a fact that PSCO states that it "acknowledged categorically." *See* 19 U.S.C. § 1505; PSCO's Brief at 19. Consistent with this legal obligation, PSCO also reported that it had paid the Section 232 duties on entries of its goods during the POR. Final IDM at 15. Specifically, PSCO reported that "{d}uring the POR, PSCO acted as importer of record and paid normal U.S. Customs duties, as well as antidumping duty deposits, and special Section 232 duties . . . ." BCQR at Section C, p. 14. Finally, PSCO reported that its U.S. sales prices were inclusive of Section 232 duties. *Id.* at Section C, p. 49.

PSCO argues that Commerce overread its initial reporting. While PSCO "acknowledged categorically" that, it was responsible for paying 232 duties as the importer of record, and claimed to have paid 232 duties accordingly, the company argues that it should have been clear that it was not reporting that it had paid Section 232 duties on *all* of its U.S. sales for which it acted as the importer of record. PSCO's Brief at 19; *see also* BCQR at 14. But PSCO made no claim that another party paid the Section 232 duties on some entries until after the preliminary results were issued. *Compare* BCQR at 14, 49, *with* 4th SQR at 1-3. Moreover, in taking this apparently new position, PSCO did not provide direct evidence of another party's payment of the 232 duties. Final Calculation Memo at 8. Weighing the evidence before it, Commerce reasonably found that the record contained substantial evidence to support the conclusion that PSCO paid Section 232 duties on rebar that it imported on or after March 22, 2018. Final IDM at 15-16.

Further, with regard to PSCO's claim that Commerce's request for entry-specific duty payment information necessarily reflected Commerce's understanding that PSCO might not have paid the duties, despite its role as importer of record, PSCO's Brief at 20-21, this assumption is not justified. As Commerce explained, while it relied on PSCO's responses to the agency's original questionnaires in making its preliminary calculations, those questionnaires had not included Commerce's standardized Section 232 appendix questions. Final IDM at 16; Final Calculation Memo at 7. Commerce therefore included these questions in a post-preliminary questionnaire. Final IDM at 16; Final Calculation Memo at 7. Reflecting their standardized, boilerplate nature, the questions did not even refer to PSCO by name, instead using the generic "{respondent}." Letter from Thomas Gilgunn to Power Steel Co., Ltd., re: *Antidumping Duty Administrative Review of Steel Concrete Reinforcing Bar from Taiwan: Third Supplemental Questionnaire* (Dec. 20, 2019) at Attachment, Question 2, P.R. 89. Because these were standardized questions drafted to apply to

any respondent – including respondents that did not act as importers of record for any of their sales – the questions did not suggest any specific belief on Commerce's part that PSCO might not have paid duties that it previously reported as having paid. Indeed, the final calculation memo indicates that Commerce had no such expectation, given PSCO's previous reporting. Final Calculation Memo at 7 ("For the first time in the proceeding, Power Steel claimed that, although it was importer of record and responsible for the section 232 duty payment, it did not pay for certain section 232 duties for certain U.S. sales for which section 232 duties were owed.").

Finally, PSCO argues that had Commerce wished for the company to provide specific forms of documentation to show that someone besides itself paid the Section 232 duties for the relevant entries, the agency should have requested such information. PSCO's Brief at 21-22. But Commerce had no reason at the time it posed its questions to believe that anyone other than PSCO had paid the duties. Again, PSCO had reported itself as the importer of record for its goods, and even PSCO characterizes itself as having "acknowledged categorically" that the importer of record is responsible for payment of customs duties, inclusive of 232 duties. *Id.* at 19; *see also* BCQR at 14 and 49. It was PSCO that sought to change its prior reporting late in the proceeding, and it was PSCO that ultimately had the burden of proof with respect to its desired, favorable treatment of the [     ] sales at issue. *See, e.g.*, *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011); *Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329, 1343 (Ct. Int'l Trade 2019). PSCO cannot legitimately shift that burden to Commerce.

In sum, PSCO's complaints that it cooperated with Commerce's information requests, that Commerce overread its reporting, and that it cannot be faulted for not having providing data that was not requested do not compel a finding that Commerce erred in determining that PSCO paid the Section 232 duties for the sales at issue. Rather, Commerce's determination should be affirmed.

**Business Proprietary Information<br>Has Been Deleted**

### D.    Commerce Did Not Err in Its Analysis of PSCO's Contract and Emails

PSCO argues that Commerce erred in its analysis of the contract and emails that PSCO provided to support its claim that it did not pay the 232 duties for the [    ] sales at issue. PSCO's Brief at 25-31. PSCO first argues that Commerce failed to undertake an analysis of the "legal validity of the hand-written revision" to its contract with its customer, and that, had it done so, it would have found that the revision was a legally valid amendment to the contract terms. *Id.* at 26-27. Second, PSCO argues that Commerce "unreasonably failed to consider all relevant information" in its analysis of PSCO's email correspondence with its customer. *Id.* at 27-31. PSCO's arguments, however, do not persuade that Commerce committed any error here for which a remand is required.

First, PSCO argued that Commerce failed to recognize the legal validity of the amended contract between itself and its customer. But as Commerce noted, what PSCO provided was a contract that called for PSCO to pay for duties – but with [

]. *See* Final Calculation Memo at 8; 4th SQR at Exhibit 5, p. 2. It is reasonably discernable that Commerce did not view the annotation as a legally binding contract amendment, given (1) RTAC's arguments to that effect, and (2) [

]. Final Calculation Memo at 8; *see also* Final IDM at 15 (summarizing RTAC's arguments); 4th SQR at Exhibit 5, p. 2; *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). Indeed, the "amended" contract provides no indication of whether the annotation was [                              ], as it was [                ]. 4th SQR at Exhibit 5, p. 2. Complicating PSCO's position, the annotation [

]. *Id.* It would not appear possible for

two parties to legally [               ] by means of an [            ] handwritten annotation on a contract

in which the [                          ].

Second, PSCO argues that the email communications it provided between itself and its

customer further demonstrate that PSCO did not pay the duties for the [     ] entries at issue.

PSCO's Brief at 27-31. In this respect, PSCO claims that Commerce has "unreasonably fault{ed}

PSCO for not having any email communications with the ultimate consignee," which is the party

that PSCO alleges to have paid the duties. *Id.* at 28. PSCO argues that there is no reason that it

should have been able to supply such communications, as it was not in direct privity with the

consignee. *Id.* The difficulty for PSCO is that its email communications comprise a discussion of

duty payment, but do not incorporate any direct confirmation from the supposed payor as to that

payor's understanding, or direct evidence of the supposed payor's payment of an amount equal to

the duties in question. *Id.* at Exhibit 4; *see also* Final Calculation Memo at 8. Indeed, as Commerce

noted, PSCO failed to provide payment documentation to show that the alleged payor actually paid

the duties at issue here. Final Calculation Memo at 8.

PSCO claims that while Commerce accurately found that PSCO issued the ultimate

consignee a letter formally requesting that the consignee pay the duties, the agency disregarded

the portion of the email communications in which PSCO's customer explained [

]. PSCO's Brief at 29; 4th SQR at Exhibit 4, p. 2. But Commerce did not ignore this

evidence. Rather, it is reasonably discernable from the record that Commerce reviewed the email

correspondence between PSCO and its customer regarding [

], but concluded that it was insufficient to establish PSCO's claim given the lack of

any direct confirmation from the consignee as to the consignee's intent to pay the duties, or actual

payment thereof. Final Calculation Memo at 8 (noting the lack of documentation "on the record of this review" indicating "that the ultimate consignee intended to pay or ultimately paid the section 232 duties").

PSCO next claims that Commerce unreasonably concluded that additional emails between the [                                              ] did not establish that the consignee had paid [            ] the duties at issue. PSCO's Brief at 30. But the correspondence at issue does not [                                                          ]. 4th SQR at Exhibit 4; *see also* Final Calculation Memo at 8. Moreover, the relevant correspondence does not consist of direct correspondence between PSCO and the consignee, but takes the form of excerpted portions of an email discussion between [                        ], pasted into emails in which PSCO and its customer discuss what the consignee might have done, or may have intended. Final Calculation Memo at 8. In fact, the record contains no emails between PSCO and the consignee, or any direct payment documentation demonstrating the consignee's alleged payment of the duties at issue. *Id.*

Finally, PSCO again faults Commerce for not having requested documentation to specifically show the payment of the Section 232 duties by a party other than PSCO. PSCO's Brief at 30-31. But as discussed above, it was PSCO's burden to place on the record the information necessary to support its desired adjustment to its original reporting, and to show that a party other than PSCO – who was legally responsible for duty payment under U.S. law – actually paid the duties in question. *See, e.g.*, *QVD Food Co.*, 658 F.3d at 1324; *Changzhou Trina Solar Energy Co.*, 359 F. Supp. 3d at 1343. The documentation that PSCO provided in support of its alteration to its reporting, however, did not include direct evidence of the payment of the duties by another party. 4th SQR at Exhibits 4 and 5; see also Final Calculation Memo at 8. Because PSCO failed to

**Business Proprietary Information Has Been Deleted**

provide documentation sufficient to demonstrate compel a finding that another party actually paid the Section 232 duties at issue here, and because PSCO took on the legal obligation to pay those duties by acting as the importer of record, Commerce's determination should be sustained.

### E.   Commerce Did Not Otherwise Err in its Analysis

Finally, PSCO argues that its accounting records do not show that PSCO paid the duties on the [     ] entries at issue. Specifically, PSCO notes that Commerce asked the company to reconcile its reported Section 232 duty payments to its books and records. PSCO's Brief at 22. PSCO states that its reconciliation showed that it booked the payment of Section 232 duties for certain entries of its merchandise, but not for the entries in question. *Id.* at 22-23. Regardless of whether the record evidence confirms that a particular non-PSCO party paid the duties on these entries, PSCO argues that its reconciling data confirm that PSCO did not pay them. *Id.* at 32-34.

PSCO's claims are unpersuasive. The accounting documentation that PSCO submitted to Commerce reflects the company's payment of Section 232 duties on certain entries, and shows how the booked payments flow through into PSCO's reporting of the payment of those duties to Commerce. *See* 4th SQR at Exhibits 1, 2, and 8. But they do not show that PSCO was not the party that paid the Section 232 duties for the [     ] entries at issue. Even if accepted at face value, the accounting documents on the record show, at most, that duties for these entries were not booked in the same general ledger account, [                    ] as duties paid on other entries. *Id.*

To comply with the substantial evidence standard, Commerce's decisions must rest on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). To show inconsistency with this standard, it is not enough for PSCO to present an alternative reading of the record, even one that a reasonable mind would accept. "Reasonable minds may differ, but a determination does not fail for lack of

substantial evidence on that account." *See, e.g.*, *Pastificio Lucio Garofalo, S.p.A. v. United States*, 35 CIT 630, 632, 783 F. Supp. 2d 1230, 1233 (2011) (quoting *Siderca S.A.I.C. v. United States*, 29 CIT 1030, 1048, 391 F. Supp. 2d 1353, 1369 (2005)). Rather, PSCO must show that the record could *only* support a conclusion other than that reached by the agency. *See Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 669 (Fed. Cir. 2019); *see also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351-52 (Fed. Cir. 2006) (discussing substantial evidence standard). This it cannot do.

Commerce's treatment of the [     ] sales/entries at issue in this case is rooted in PSCO's own reporting. PSCO reported acting as the importer of record for its sales, a fact that it concedes made it legally responsible for duty payment. *See, e.g.*, PSCO's Brief at 19. Moreover, PSCO reported having paid the duties on its sales, inclusive of Section 232 duties. BCQR at Section C, p. 14. When it later sought to alter this reporting, and claimed that it had not paid the 232 duties on all of its sales, it provided supportive documentation that, as described above, does not confirm the payment of the relevant duties by any other party. And while PSCO has pointed to its accounting records as documentation of the fact that it did not book these duties in the same account where it booked other, similar duties, these records do not confirm that PSCO did not pay the duties at all.

PSCO had the opportunity to provide documentation to show that another party paid the duties in its fourth supplemental questionnaire response. However, rather than provide such documentation, it determined solely to rely on inconclusive evidence that does not demonstrate either another party's actual payment, or PSCO's actual non-payment. Further, PSCO provided record evidence indicating that it was the importer of record for all of its entries, including those for which is claimed not to have paid Section 232 duties. 4th SQR at Exhibit 3. Given the record

as a whole, Commerce reasonably found that the record supported a determination that PSCO paid

Section 232 duties on all entries of its merchandise made on or after March 23, 2018.

## V.    **CONCLUSION**

For the reasons detailed above, RTAC respectfully submits that this Court should affirm the

final results of Commerce's 2017-2018 administrative review of the antidumping duty order on

Taiwanese rebar as to (1) deduction of Section 232 duties from PSCO's U.S. prices generally, and

(2) Commerce's determination that PSCO incurred Section 232 duties on all U.S. sales.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
John R. Shane, Esq.
Maureen E. Thorson, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to the Rebar Trade Action Coalition*

Dated: June 8, 2021

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Rebar Trade Action Coalition's response brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 6,438 words.

<u>*/s/ Alan. H. Price*</u>
(Signature of Attorney)

<u>Alan H. Price</u>
(Name of Attorney)

<u>Rebar Trade Action Coalition</u>
(Representative Of)

<u>June 8, 2021</u>
(Date)