## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| POWER STEEL CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Court No. 20-03771 |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| and | ) |
| | ) |
| REBAR TRADE ACTION COALITION, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON.
Director

L. MISHA PREHEIM
Assistant Director

ANN C. MOTTO
Trial Attorney
Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 353-7968
Fax: (202) 305-2062
Email: Ann.C.Motto@usdoj.gov

OF COUNSEL:
ELIO GONZALEZ
Senior Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

June 8, 2021

Attorneys for Defendant United States

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ...................................................1

    I.     Administrative Determination Under Review .......................................1

    II.    Statement Of The Issues ........................................................................2

STATEMENT OF FACTS ..............................................................................2

SUMMARY OF ARGUMENT ........................................................................6

ARGUMENT ..................................................................................................7

    I.     Standard Of Review ..............................................................................7

    II.    Commerce's Determination Is Supported By Substantial Evidence And In Accordance With Law .......................................................................9

          A.    Commerce Reasonably Determined That Section 232 Duties Are "United States Import Duties" That Must Be Deducted From Export Price .........10

          B.    Commerce's Interpretation Is Consistent With *Wheatland Tube* .............12

          C.    Commerce's Determination That Power Steel Paid Section 232 Duties On All United States Sales Is Supported By Substantial Evidence And In Accordance With Law ...........................................................................21

CONCLUSION ..............................................................................................28

**TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE(S)**

*AK Steel Corp. v. United States*,
    988 F. Supp. 594 (Ct. Int'l Trade 1997) .......................................................... 12

*Am. Inst. for Int'l Steel, Inc. v. United States*,
    806 F. App'x. 982 (Fed. Cir. 2020) ................................................................. 20

*Apex Exports v. United States*,
    777 F.3d 1373 (Fed. Cir. 2015)...................................................................... 11

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)...................................................................... 8

*Bethlehem Steel Corp. v. United States*,
    27 F. Supp. 2d 201 (Ct. Int'l Trade 1998) ....................................................... 12

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021). ........................................... *passim*

*Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc.*,
    104 S. Ct. 2778 (1984)................................................................................ 6, 8

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007)................................................................. 27, 28

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)..................................................................................... 7

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)..................................................................................... 8

*Corus Staal BV v. U.S. Dep't of Com.*,
    259 F. Supp. 2d 1253 (Ct. Int'l Trade 2003) .................................................. 27

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012)...................................................................... 25

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000)...................................................................... 23

*Federal Mogul Corp. v. United States*,
    813 F. Supp. 856 (Ct. Int'l Trade 1993) .......................................................... 12

*Fla. Citrus Mut. v. United States*,
    515 F. Supp. 2d 1324 (Ct. Int'l Trade 2007) ................................................. 6

*Fujitsu General, Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996)........................................................................... 9

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................................. 28

*Hercules, Inc. v. United States*,
    673 F. Supp. 454 (Ct. Int'l Trade 1987) ........................................................ 27

*Hoogovens Staal BV v. United States*,
    4 F. Supp. 2d 1213 (Ct. Int'l Trade 1998) .................................................... 12

*JBF RAK LLC v. United States*,
    790 F.3d 1358 (Fed. Cir. 2015)......................................................................... 9

*Nan Ya Plastics Corp., Ltd. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016)....................................................................... 23

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006)......................................................................... 8

*PQ Corp. v. United States*,
    652 F. Supp. 724 (Ct. Int'l Trade 1987) ........................................................ 12

*QVC Food Co., Ltd. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011)................................................................ 23, 24

*Shijiazhuang Goodman Trading Co. v. United States*,
    172 F. Supp. 3d 1363 (Ct. Int'l Trade 2016) ................................................ 27

*Timken Co. v. United States*,
    354 F.3d 1334 (Fed. Cir. 2004).................................................................. 8, 11

*U.S. Steel Grp. v. United States*,
    96 F.3d 1352 (Fed. Cir. 1996)........................................................................... 9

*U.S. Steel Grp., a Unit of USX Corp. v. United States*,
    15 F. Supp. 2d 892 (Ct. Int'l Trade 1998) ................................................. 6, 12

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009)............................................................................... 7, 8, 9

*Universal Steel Prod., Inc. v. United States,*
    495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021) ................................................. 10

*Wheatland Tube Co. v. United States,*
    495 F.3d 1355 (Fed. Cir. 2007) .................................................................. *passim*

*Yama Ribbons & Bows Co. v. United States,*
    865 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ................................................. 25

*Zenith Electronics Corp. v. United States,*
    77 F.3d 426 (Fed. Cir. 1996) ........................................................................ 12

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) ........................................................................................ 7

19 U.S.C. § 1675 ...................................................................................................... 17

19 U.S.C. § 1677 ................................................................................................ *passim*

19 U.S.C. § 1862 ................................................................................................ *passim*

19 U.S.C § 2132 ....................................................................................................... 17

19 U.S.C. § 2251 ................................................................................................. 13, 17

## PRESIDENTIAL PROCLAMATIONS AND REGULATIONS

*Presidential Proclamation 4907 of March 10, 1982: Imports of Petroleum,*
    48 Fed. Reg. 10,507 (Mar. 10, 1982) ............................................................ 15

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States,*
    83 Fed. Reg. 11,625 (Mar. 15, 2018) ....................................................... *passim*

*Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States,*
    83 Fed. Reg. 13,361 (Mar. 28, 2018) ............................................................. 2

*Proclamation 9759 of May 31, 2018 Adjusting Imports of Steel Into the United States,*
    83 Fed. Reg. 25,857 (June 5, 2018) ................................................................ 2

*Proclamation 9740 of April 30, 2018 Adjusting Imports of Steel Into the United States,*
    83 Fed. Reg. 20,683 (May 7, 2018) ................................................................. 2

*Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United States,*
    83 Fed. Reg. 40,429 (Aug. 15, 2018) .............................................................. 2

*Proclamation 9777 of August 29, 2018 Adjusting Imports of Steel Into the United States*,
83 Fed. Reg. 45,025 (Sept. 4, 2018) ................................................................. 2

*Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty
Administrative Review*,
69 Fed. Reg. 19,153 (Dep't of Commerce Apr. 12, 2004) ................................... 13, 14, 19

*Certain Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping
Duty Administrative Review;*
69 Fed. Reg. 61,649 (Dep't of Commerce Oct. 20, 2004)................................................. 14

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
83 Fed. Reg. 63,615 (Dep't of Commerce Jul. 12, 2018).................................................... 4

*Steel Concrete Reinforcing Bar from Taiwan*,
84 Fed. Reg. 68,884 (Dep't of Commerce Dec. 17, 2019)................................................. 4

*Steel Concrete Reinforcing Bar from Taiwan*,
85 Fed. Reg. 63,505 (Dep't of Commerce Oct. 8, 2020)................................................. 2

## <u>OTHER AUTHORITIES</u>

Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, 1994
U.S.C.C.A.N. 3773 ........................................................................................19

S. Rep. No. 67-16 (1921) .........................................................................................6, 14

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

———————————————————————

|  |  |
|---|---|
| POWER STEEL CO., LTD.,                     ) | |
|                                            ) | |
|                   Plaintiff,               ) | |
|                                            ) | |
|        v.                                  ) | |
|                                            ) | Court No. 20-03771 |
| UNITED STATES,                             ) | |
|                                            ) | |
|                   Defendant,               ) | |
| and,                                       ) | |
|                                            ) | |
| REBAR TRADE ACTION COALITION,              ) | |
|                                            ) | |
|                   Defendant-Intervenor.    ) | |
———————————————————————

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the Court, defendant, the United States, respectfully responds to the motion for judgment on the agency record filed by plaintiff, Power Steel Co., Ltd. (plaintiff or Power Steel).  Plaintiff challenges several aspects of the United States Department of Commerce's (Commerce) final results in the 2017-2018 administrative review of the antidumping duty order on steel concrete reinforcing bar (rebar) from Taiwan.  As we demonstrate below, the Court should deny plaintiff's motion because Commerce's final results are supported by substantial evidence and in accordance with law.

**STATEMENT PURSUANT TO RULE 56.2**

**I.    Administrative Determination Under Review**

The administrative determination under review is the final results of the 2017-2018 administrative review of the antidumping duty order covering rebar from Taiwan.  *See Steel Concrete Reinforcing Bar from Taiwan*, 85 Fed. Reg. 63,505 (Dep't of Commerce Oct. 8, 2020)

(final admin. review) (Final Results) (P.R. 132),[1] and accompanying issues and decision memorandum (IDM) (P.R. 128).  The period of review is March 7, 2017 through September 30, 2018.

## II.   Statement Of The Issues

1.  Whether Commerce's deduction of Section 232 duties from United States price is supported by substantial evidence and in accordance with law.

2.  Whether Commerce's determination that Power Steel paid Section 232 duties for its United States sales is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On March 8, 2018, pursuant to his authority under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, the President imposed a 25 percent *ad valorem* tariff on imports of steel articles from all countries, except Canada and Mexico.  *See Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).[2]  The President concurred with the Secretary of Commerce's finding that steel articles were being imported into the United States in such quantities and under such circumstances as to threaten to impair the country's national security.  *Id.* ¶ 5; *see* 19 U.S.C. § 1862(b)(3)(A).

---

[1]  Citations to public and confidential documents from the administrative record are identified as "P.R. __" and "C.R.__," respectively.  Citations to the motion for judgment on the agency record filed by Power Steel are referenced as "Pl. Br.".

[2]  The President issued several additional proclamations after Proclamation 9705, none of which affected the applicable duty rate in Taiwan.  *See, e.g.*, *Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 13,361 (Mar. 28, 2018); *Proclamation 9740 of April 30, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 20,683 (May 7, 2018); *Proclamation 9759 of May 31, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 25,857 (June 5, 2018); *Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 40,429 (Aug. 15, 2018); *Proclamation 9777 of August 29, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 45,025 (Sept. 4, 2018).

The Secretary found that excessive steel imports were weakening our internal economy and shrinking our ability to meet national security steel production requirements in a national emergency.  *Id.* ¶ 2.  The goal of the 25 percent tariff was to reduce imports to a level that would "ensure that domestic producers can continue to supply all the steel necessary for critical industries and national defense."  *Id.* ¶¶ 4-5, 8.  The President stated that the new 25 percent tariff applied "in addition to any other duties, fees, exactions, and charges applicable to such imported steel articles."  *Id.* clause 2.

To establish the tariff, the President modified subchapter III, chapter 99, of the Harmonized Tariff Schedule of the United States (HTSUS) to add a new heading, 9903.80.01, which provided for an additional 25 percent tariff for "products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Canada [or] of Mexico…or any exclusions that may be determined and announced by the Department of Commerce."  HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018).  The President also added a new Note 16, subsection (a) of which provided:

> Heading 9903.80.01 sets forth the *ordinary customs duty* treatment applicable to all entries of iron or steel products from all countries, except products of Canada and of Mexico, classifiable in the headings or subheadings enumerated in this note.  Such goods shall be subject to duty as provided herein.  No special rates of duty shall be accorded to goods covered by heading 9903.80.01 under any tariff program enumerated in general note 3(c)(i) to the tariff schedule.  *All anti-dumping, countervailing, or other duties and charges applicable to such goods shall continue to be imposed.*

Proclamation 9705, Annex (U.S. Note 16(a) (emphasis added)).  Consistent with the President's instructions, the following row was added to the HTSUS:

3

| Heading/ Subheading | Stat Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 9903.80.01 | 1/ | Products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Canada, of Mexico, of Australia, of Argentina, of South Korea, of Brazil, or of the member countries of the European Union or any exclusions that may be determined and announced by the Department of Commerce.................. | 1/ | 25% | | The duty provided in the applicable subheading + 25% |

HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018).

The President's Section 232 duties went into effect on March 23, 2018, and imports of steel rebar produced by Power Steel were subject to the 25 percent tariff after that date. *See Proclamation 9705*, clause 2.

In December 2018, Commerce initiated an administrative review of the antidumping duty order covering rebar from Taiwan for the period of review of March 7, 2017 through September 30, 2018. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 63,615 (Dep't of Commerce Jul. 12, 2018). In December 2019, Commerce published the preliminary results of its review. *Steel Concrete Reinforcing Bar from Taiwan*, 84 Fed. Reg. 68,884 (Dep't of Commerce Dec. 17, 2019) (prelim. admin. review) (Preliminary Results) (P.R. 88), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 85). In the Preliminary Results, Commerce treated Section 232 duties as "United States import duties" and deducted them from Power Steel's United States price, consistent with 19 U.S.C. § 1677a(c)(2)(A). PDM at 8-10; *see also* Preliminary Analysis Memorandum (C.R. 82) at 3. Commerce made this deduction because Power Steel reported paying Section 232 duties for certain merchandise, including rebar, entered after March 23, 2018. *Id.*; *see also* Power Steel March 14, 2019 Response (C.R. 13) at 14 and 49.

In the Final Results, Commerce continued to treat Section 232 duties as "United States import duties" for purposes of the antidumping duty statute, and continued to deduct them from

Power Steel's United States price.  IDM at 10-13, 15-16.  Commerce acknowledged the Federal

Circuit's decision in *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007),

sustaining Commerce's determination not to adjust United States price in antidumping

proceedings for Section 201 safeguard duties.  Commerce determined, however, that Section 232

duties are materially different from Section 201 and antidumping duties, and, therefore,

*Wheatland Tube* does not require a different outcome in this case.  IDM at 11 (concluding that

"section 232 duties are not akin to antidumping or section 201 duties.").

Moreover, as Commerce reasoned, the President explicitly stated that the Section 232

tariff applied in addition to any other duties.  *Proclamation 9705*, clause 2; *see* IDM at 13.  The

President also stated that heading 9903.80.01—which established the Section 232 duty—sets

forth the "ordinary customs duty" applicable to all steel imports.  *Proclamation 9705*, Annex

(U.S. Note 16(a)); *see* HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29,

2018) (table referring to the 25% rate as "general," not "special.").  Accordingly, Commerce

determined that Section 232 duties "are treated as any other duties," and are required to be

deducted from United States price.  IDM at 13.

Commerce continued to deduct Section 232 duties from Power Steel's United States sales

because record evidence demonstrated that Power Steel was the importer of record for all its

United States sales and it reported paying Section 232 duties for its sales.  IDM at 15-16; Final

Analysis Memorandum (C.R. 98) at 7-8; *see* Power Steel March 14, 2019 Response (C.R. 13) at

14, 49; Power Steel September 3, 2019 Response (C.R. 41) at 17.  Commerce found that the

information Power Steel submitted in response to Commerce's supplemental questionnaire did

not demonstrate that Power Steel did not pay for some of the Section 232 duties in question.

IDM at 15-16.  Thus, because record evidence demonstrated that Power Steel paid Section 232

duties, Commerce was required to deduct those duties from Power Steel's United States price, in accordance with section 1677a(c)(2)(A).  *Id.*

## SUMMARY OF ARGUMENT

19 U.S.C. § 1677a(c)(2)(A) provides that the price used to establish export price (*i.e.*, United States price) shall be reduced by the amount included in such price attributable to "United States import duties."  The phrase "United States import duties" is ambiguous, *see, e.g.*, *Wheatland Tube Co.*, 495 F.3d at 1359; *Fla. Citrus Mut. v. United States*, 515 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2007), *aff'd*, 550 F.3d 1105 (Fed. Cir. 2008), and, therefore, Commerce's interpretation of the phrase to encompass Section 232 duties is entitled to deference under *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc.*, 104 S. Ct. 2778 (1984).

In the Final Results, Commerce explained that the legislative history of the Antidumping Act of 1921 referred to antidumping duties as "special dumping duties," signifying that "special dumping duties" were distinguished and treated differently from ordinary "United States import duties" under the antidumping duty statute.  PDM at 9; IDM at 11; *see* S. Rep. No. 67-16 (1921).[3]  Commerce determined that Section 232 duties were not similar to antidumping or safeguard duties—and therefore did not fall outside of the definition of "United States import duties"—because Section 232 duties are not focused on remedying a domestic injury, Section 232 does not have a termination provision, and, when deducted from United States price, Section 232 duties do not create a double remedy.  IDM at 11-13.

---

[3] Commerce's practice of distinguishing antidumping duties from "United States import duties" has been sustained by this Court and the Federal Circuit.  *See, e.g., U.S. Steel Grp., a Unit of USX Corp. v. United States,* 15 F. Supp. 2d 892, 898 (Ct. Int'l Trade 1998) (collecting cases); *Wheatland Tube Co.*, 495 F.3d at 1361 (sustaining Commerce's determination that safeguard duties, like antidumping duties, do not fall within the meaning of "United States import duties.").

Commerce further explained that the President's proclamation treated Section 232 duties as any other duties, referring to them as "ordinary" customs duties and instructing that the duties be imposed in addition to all other duties, including antidumping duties.  IDM at 13.  Moreover, this Court recently sustained Commerce's determination that export price must be reduced by Section 232 duties paid.  *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. and Borsuan Mannesmann Pipe U.S. Inc. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) (*Borusan*).  Thus, Commerce's interpretation of the statute is reasonable and must be sustained.

Additionally, Commerce reasonably determined that Power Steel paid Section 232 duties for all of its United States sales.  Power Steel submitted information indicating that it was the importer of record and that it paid Section 232 duties for its United States sales.  The additional information submitted by Power Steel in its supplemental questionnaire responses did not demonstrate that some other party paid the Section 232 duties for some of the sales in question. Commerce's reliance on Power Steel's initial statements that it was the importer of record for its United States sales and paid Section 232 duties was reasonable.  Therefore, Commerce's determination to deduct Section 232 duties in calculating Power Steel's export prices should be sustained.

## **ARGUMENT**

### I.    **Standard Of Review**

This Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence upon the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Substantial evidence may also be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When the Court examines the lawfulness of Commerce's statutory interpretations, it employs the two-pronged test established in *Chevron*, 467 U.S. at 842-43. The Court first examines "whether Congress has directly spoken to the precise question at issue," and if it has, the agency must comply with Congress's clear intent. *Id*. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. In such cases, "{a}ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *Eurodif*, 555 U.S. at 316 (citation omitted). The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11. Indeed, "the whole point of *Chevron* is to leave the discretion provided by the

ambiguities of a statute with the implementing agency." *Eurodif*, 555 U.S. at 316 (citation and quotation marks omitted).

Finally, this Court affords Commerce an especially great deal of deference "when a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory tests.'" *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)). In that circumstance, "Commerce 'may perform its duties in the way it believes most suitable.'" *Id.* (quoting *U.S. Steel Grp.*, 96 F.3d at 1362). Consequently, Commerce receives "tremendous deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers" when it exercises its technical expertise to select and apply methodologies to implement the dictates of the trade statute. *Fujitsu General, Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996).

## II. Commerce's Determination Is Supported By Substantial Evidence And In Accordance With Law

Commerce determined that Section 232 duties constitute "United States import duties" under the statute and deducted them from Power Steel's United States Price. IDM at 10. Power Steel argues that Commerce "should have determined that Section 232 duties are 'special duties' like antidumping duties and Section {2}01 safeguard duties," and that Commerce's interpretation of the statute is inconsistent with the Federal Circuit's analysis in *Wheatland Tube Co.*, 495 F.3d at 1363. Pl. Br. at 7, 9-17. As explained below, Power Steel is wrong.

Section 232 duties *are* import duties and the phrase "United States import duties" is broad, as this Court noted in *Borusan*. 494 F. Supp. 3d at 1375. As Commerce explained, "{r}educing U.S. EP {(export price)} and CEP {(constructed export price)} by section 232

duties . . . is consistent with {the text of section 1677a(c)(2)(A)} . . . because it directs Commerce to adjust EP and CEP for" United States import duties.  IDM at 12-13.

Moreover, in establishing the Section 232 duties, the President explicitly said that the new tariff heading "sets forth the *ordinary* customs duty treatment" applicable to steel imports, and that all antidumping duties shall continue to be imposed *in addition to* Section 232 duties. *Proclamation 9705,* clause 2 and Annex (emphasis added).  Thus, not only is Commerce's interpretation consistent with the plain language of the antidumping statute, but it is consistent with the President's proclamation.[4]  Power Steel provides no arguments to the contrary.

Further, Commerce's determination is consistent with *Wheatland Tube.*  "{S}ection 232 duties are not akin to [special] antidumping or section 201 duties" because Section 232 duties serve a different purpose, do not have a statutorily-imposed duration, and, most importantly, "there would be no overlap" between antidumping and Section 232 duties "in providing the remedies sought by each."  IDM at 11-12.  Indeed, this Court already held that Commerce's determination in this regard is reasonable due to "crucial difference between Sections 201 and 232," and Commerce's determination in this case should be sustained for the same reasons.  *See Borusan*, 494 F. Supp. at 1376.

**A.  Commerce Reasonably Determined That Section 232 Duties Are "United States Import Duties" That Must Be Deducted From Export Price**

The goal of Commerce's statutorily prescribed antidumping calculation is to allow Commerce to compare the fair value of the merchandise to the price charged in the United States.  19 U.S.C. § 1677b(a)(1)(B); 19 U.S.C. § 1677a(c)(2); 19 U.S.C. § 1677b(a)(6); *see also,*

---

[4] This Court has held that Proclamation 9705 was a lawful exercise of the President's authority under Section 232.  *Universal Steel Prod., Inc. v. United States*, 495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021), *appeal docketed*, No. 21-1726 (Fed. Cir. Mar. 10, 2021).

*e.g., Apex Exports v. United States*, 777 F.3d 1373, 1374-75 (Fed. Cir. 2015) (holding that "{t}he overall goal {of the antidumping calculation methodology} is to arrange an apples-to-apples comparison between the domestic and foreign price of merchandise.").  Accordingly, both export price and normal value are subject to adjustments "so that they closely reflect the price of subject merchandise at a common point in the chain of commerce."  *Id.* at 1734 (citing 19 U.S.C. § 1677b(a)(1)(B); 19 U.S.C. § 1677a(c)(2); 19 U.S.C. § 1677b(a)(6)).

Pertinent here, the antidumping statute directs Commerce to reduce a respondent's export price and constructed export price by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and *United States import duties* . . . ."  19 U.S.C. § 1677a(c)(2)(A) (emphasis added).  The term "United States import duties" is not defined in the statute, and Commerce's interpretation need only be reasonable to be sustained.  *See* 19 U.S.C. § 1677a(c)(2)(A); *Timken Co.*, 354 F.3d at 1342; *Wheatland Tube Co.*, 495 F.3d at 1359-60.

Commerce explained that its decision is consistent with the statute's language because it directs Commerce to adjust export price for United States import duties, and Section 232 duties are indisputably import duties.  *See* IDM at 12-13.  Commerce also explained that the President's Proclamation is "critical to this point" because "it states that section 232 duties are to be imposed in addition to other duties unless expressly provided for in the proclamation."  IDM at 13; *Proclamation 9705,* clause 2.  Indeed, the President explicitly referred to the Section 232 duties as "ordinary" customs duties, *id.* at Annex, supporting Commerce's determination that "section 232 duties are treated as any other duties."  IDM at 13; *see* HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018) (table indicating that the rate of duty for steel imports is the duty provided in the regular, applicable subheading plus 25%).  Commerce's interpretation of the phrase "United States import duties" is reasonable and is entitled to

11

deference because it is consistent with the broad language of the statute and with the President's proclamation.  *See, e.g.*, *Wheatland Tube Co.*, 495 F.3d at 1359; *Zenith Electronics Corp. v. United States*, 77 F.3d 426, 430 (Fed. Cir. 1996) (the Court must interpret an ambiguous statute "with deference to Commerce's interpretation. . . .").

   **B.  <u>Commerce's Interpretation Is Consistent With *Wheatland Tube*</u>**

   Power Steel's sole argument is that Commerce's interpretation is inconsistent with *Wheatland Tube*.  *See* Pl. Br. at 9-17.  But this Court already sustained Commerce's analysis distinguishing Section 232 duties from the duties at issue in *Wheatland Tube Co.*, 495 F.3d 1355, and Power Steel's arguments are, therefore, unavailing.  *See Borusan*, 494 F. Supp. 3d at 1374-76.  Nonetheless, we address Power Steel's arguments.

   As an initial matter, Commerce's interpretation of the phrase "United States import duties" as not including antidumping duties has been consistently sustained. *See AK Steel Corp. v. United States*, 988 F. Supp. 594, 607 (Ct. Int'l Trade 1997); *Hoogovens Staal BV v. United States*, 4 F. Supp. 2d 1213, 1220 (Ct. Int'l Trade 1998); *U.S. Steel Group*, 15 F. Supp. 2d at 898-900; *Bethlehem Steel Corp. v. United States*, 27 F. Supp. 2d 201, 208 (Ct. Int'l Trade 1998); *PQ Corp. v. United States*, 652 F. Supp. 724, 737 (Ct. Int'l Trade 1987) (sustaining Commerce determination not to deduct antidumping duty cash deposits); *Federal Mogul Corp. v. United States*, 813 F. Supp. 856, 872 (Ct. Int'l Trade 1993) (same); *see also Wheatland Tube Co.*, 495 F.3d 1355.

In *Wheatland Tube*, the Federal Circuit sustained Commerce's interpretation of the same phrase as also not including Section 201 safeguard[5] duties.  495 F.3d at 1355-60.  In comparing Section 201 duties with antidumping duties, the Federal Circuit made the following observations:

> (1) "{l}ike antidumping duties, {Section} 201 safeguard duties are remedial duties that provide relief from the adverse effects of imports;"
>
> (2) "{n}ormal customs duties, in contrast, have no remedial purpose;"
>
> (3) "antidumping duties and {section} 201 safeguard duties, unlike normal customs duties, are imposed based upon almost identical findings that domestic industry is being injured or threatened with injury due to the imported merchandise;" and
>
> (4) "{Section} 201 safeguard duties are like antidumping duties . . . because they provide only temporary relief from the injurious effects of imports," whereas normal customs duties "have no termination provision, and are permanent unless modified by Congress."

495 F.3d at 1362-63.  The Federal Circuit also held that "{t}o assess both a safeguard duty and an antidumping duty on the same imports without regard to the safeguard duty, would be to remedy substantially overlapping injuries twice."  *Id.* at 1365.

After a thorough analysis, Commerce determined that Section 232 duties are not akin to Section 201 or antidumping duties.  IDM at 10-13; PDM at 8-10; *see also Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153, 19,159 (Dep't of Commerce Apr. 12, 2004) (*Stainless Steel Wire Rod from Korea*) ("Although the {antidumping duty} law does not define the term 'United States import duties,' the Senate Report that accompanied the Antidumping Act of 1921 (the '1921 Act')

---

[5] Section 201, 19 U.S.C. § 2251, "permits the President of the United States to impose safeguard duties on imported merchandise if the merchandise 'is being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing an article like or directly competitive with the imported article.'"  *Wheatland Tube Co.*, 495 F.3d at 1357 (quoting § 2251).

contrasts antidumping duties (which it refers to as 'special dumping duties') with normal customs duties (which it refers to as 'United States import duties'). . . .  Thus, Congress has long recognized that at least some duties implementing trade remedies—including at least antidumping duties—are special duties that should be distinguished from ordinary customs duties.")) (citing S. Rep. No. 67-16 at 4 (1921)); *see also Certain Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review;* 69 Fed. Reg. 61,649 (Dep't of Commerce Oct. 20, 2004).

*First*, in *Wheatland Tube*, "Commerce found that antidumping duties and § 201 safeguard duties, unlike normal customs duties, are imposed based on almost identical findings that domestic industry is being injured or threatened with injury due to the imported merchandise." 495 F.3d at 1362.  Power Steel argues that Section 232 duties are also remedial in nature.  Pl. Br. at 11-12.  But even if Section 232 might be considered remedial in a "broad sense," *Borusan*, 494 F. Supp. 3d at 1374, Section 232 duties are not imposed *because* a domestic industry is being injured or threatened.  *See* IDM at 12; *Stainless Steel Wire Rod from Korea*, 69 Fed. Reg. at 19,159 (finding that Section 201 duties were similar to antidumping duties and therefore special remedial duties because they are intended to provide "temporary relief for an industry suffering from serious injury.").  Section 232 duties are imposed to address imports that threaten to impair the national security, *see* 19 U.S.C. § 1862; IDM at 12, and can be "used to promote vital nascent industries, not just already established injured industries," *Borusan*, 494 F. Supp. 3d at 1374.  While an *effect* of the President's Section 232 duties may be to assist a weakened domestic injury, the *purpose* of the duties was to alleviate a national security concern—a purpose much broader than Section 201 or antidumping duties.  IDM at 12.

Proclamation 9705 states that it "is necessary and appropriate to adjust imports of steel articles so that such imports will not threaten to impair the *national security . . . .*" *Proclamation 9705*, ¶ 11 (emphasis added); *see also* IDM at 11-12.  The President sought to alleviate the national security risk that our country's steel "industry will continue to decline, leaving the United States at risk of becoming reliant on foreign producers of steel to meet our national security needs—a situation that is fundamentally inconsistent with the safety and security of the American people." *Proclamation 9705*, ¶ 11.  Antidumping duties and Section 201 safeguard measures, on the other hand, are "directed at the same overarching purpose – protecting the bottom line of domestic producers."  *See Wheatland Tube Co.,* 495 F.3d at 1362.

Further, the text of Section 232 concerns itself with "the effects on the *national security* of imports of the article."  *See* 19 U.S.C. § 1862(b)(1)(A) (emphasis added).  The President may not act to adjust imports *unless* he concurs with the finding of the Secretary that articles are being imported in such quantities or under such circumstances as to threaten to impair the national security.  *Id.* § 1862(c).  By contrast, for an antidumping duty to be imposed, a domestic industry must be materially injured or threatened with material injury.  *Wheatland Tube Co.*, 495 F.3d at 1362.  Likewise, Section 201 duties may only be imposed if a domestic producer is experiencing serious injury or threat.  *Id.* (citing section 2251).  The Federal Circuit stated that normal customs duties can be imposed "regardless of whether the U.S. industry is suffering adverse effects as a result of imports."  *Wheatland Tube Co.,* 495 F.3d at 1362.  Section 232 duties may be imposed regardless of whether the United States industry is suffering.[6]  Thus,

---

[6] For example, President Reagan used his Section 232 authority to embargo oil imports from Libya due to concerns that the Libyan government supported terrorism.  *See Presidential Proclamation 4907 of March 10, 1982: Imports of Petroleum*, 48 Fed. Reg. 10,507 (Mar. 10, 1982).  Proclamation 4907 was issued without regard to whether United States industries were suffering.

Commerce reasonably determined that the law and purpose behind Section 232 duties materially differ from Section 201 safeguard and antidumping duties.  *See* IDM at 10-12.

Power Steel argues that Section 232 duties are remedial because they were intended to be part of the remedial actions necessary to protect United States national security interests.  Pl. Br. at 12.  Although the statute indicates that the President shall consider, among numerous other factors, the impact of foreign competition on domestic industries, the President only gives consideration to these factors "in the light of the requirements of national security{.}"  19 U.S.C. § 1862(d).  The statute's fundamental concern is national security; it does not prioritize the economic welfare of domestic industries.  *See* 19 U.S.C. § 1862 (b)(1)(A) ("the Secretary of Commerce . . . shall immediately initiate an appropriate investigation to determine the effects on the national security of imports of the article which is the subject of such request, application, or motion.); *id.* § 1862(b)(3)(A) ("the Secretary shall submit to the President a report on the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security"); *id.* § 1862(c)(1)(A)(ii) ("if the President concurs, determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security.").  Thus, Commerce reasonably determined that Section 232 duties are focused on national security concerns, and not on remedying injury to a domestic industry in the same way that Section 201 and antidumping duties are focused.  IDM at 11-13.

While the Court in *Borusan* disagreed with some of Commerce's analysis, it ultimately concluded that Commerce's reasoning was logical.  *See* 494 F. Supp. 3d at 1374.  The Court agreed that there are material differences between Section 232 and Section 201 duties.  *Id.*

*Second*, in *Wheatland Tube*, the Federal Circuit sustained Commerce's reasoning that Section 201 and antidumping duties provide "only temporary relief from the injurious effects of imports" unlike normal customs duties.  495 F.3d at 1361.  Section 201 duties are generally limited to four years, and antidumping duty orders provide for a termination after five years, with some exceptions.  *Id.* (citing 19 U.S.C. §§ 2251 and 1675).  "Normal customs duties, however, have no termination provision and are permanent unless modified by Congress."  *Id.*  Commerce correctly noted that Section 232 does not have a termination provision.  IDM at 13.  To the contrary, Congress granted the President discretion to determine the duration of Section 232 duties.  *See* 19 U.S.C. § 1862(c) (providing that the President "shall…determine the nature and *duration of the action that*…must be taken to adjust the imports…so that such imports will not threaten to impair the national security.") (emphasis added).  In contrast, antidumping and Section 201 duties have a statutory expiration date tied to the cessation of injury.  *See* 19 U.S.C. § 2251; *see also* 19 U.S.C. § 1675(d); *Wheatland Tube Co.*, 495 F.3d at 1362 (affirming Commerce's reasoning that normal customs duties are not temporary because, unlike antidumping duties, relief is not tied to continued injury).  Thus, Power Steel's argument that Commerce "did not even attempt to address the temporal aspect" of Section 232 duties is unavailing.  *See* Pl. Br. at 13.

Moreover, Congress did not describe Section 232 duties as "temporary" duties or set a time limit on the duration of these duties, despite doing so for other duties delegated to the President to implement.  *See*, *e.g.*, 19 U.S.C § 2132 (providing that "the President shall proclaim, *for a period not exceeding 150 days* (unless such period is extended by Act of Congress) – a *temporary* import surcharge" where problems with international payments arise) (emphasis added).

Power Steel contends that because the circumstances described in the Presidential

Proclamations can change and because the President can remove or modify the duties, Section

232 duties are therefore temporary.  Pl. Br. at 13-14.  This argument is inconsistent with

*Wheatland Tube.*  That the duties can be modified at some point does not make them inherently

temporary in the same way antidumping and Section 201 duties are temporary.  Normal customs

duties "have no termination provision and are permanent *unless modified by Congress*."

*Wheatland Tube Co.*, 495 F.3d at 1362 (emphasis added).  Congress delegated broad authority

and discretion to the President to determine the duration of Section 232 duties; Section 232 has

no termination provision; and the duties are permanent unless modified by the President.  The

point is:  Section 232 provides no express time-limit on the imposition of duties.  Accordingly,

Commerce determined that Section 232 duties are not analogous to special temporary safeguard

Section 201 and antidumping duties, but rather are more analogous to ordinary customs duties

with no termination provision.  *See* IDM at 13.[7]

Power Steel also claims that the placement of Section 232 duties in chapter 99 of the

HTSUS demonstrates that the duties are more similar to remedial duties because that chapter is

reserved for temporary actions such as proclamations or legislation.  Pl. Br. at 14-15.  This

argument misses the mark.  Regardless of whether chapter 99 is usually reserved for temporary,

remedial action, the President has statutorily-provided discretion to decide when Section 232

duties terminate, the President himself referred to the Section 232 duties as "ordinary" custom

duties, and he proclaimed that the Section 232 duties must be imposed in addition to

---

[7] We recognize that the Court found that "lack of permanence is not a viable reason to distinguish Section 201 duties from Section 232 duties."  *Borusan*, 494 F. Supp. 3d at 1374-75. Notwithstanding the Court's reasoning, however, the Court sustained Commerce's determination to treat Section 232 duties as United States import duties, *id*. at 1375-76, and the Court should do so here as well.

antidumping duties.  *Proclamation 9705*, Annex (U.S. Note 16(a)).  In fact, the President's new heading in chapter 99 placed the 25% rate under the "general" column, not the "special" column.  HTSUS, Revision 2, Chapter 99, subheading 9903.80.01.  The mere title of chapter 99 cannot overcome the clear language of the President's proclamations and the text of the statute.  Indeed, Commerce explained in *Stainless Steel Wire Rod from Korea* that the placement of a duty in the HTSUS is not dispositive of the purpose of that tariff and that the HTSUS "is a pragmatic way of implementing. . .  collection {of duties}." 69 Fed. Reg. at 19,160.  And a similar argument was raised in *Borusan*, and the Court was "not persuaded that the placement of Section 232 duties within the {HTSUS} has an effect."  *Borusan*, 494 F. Supp. 3d at 1376, n. 8.

*Finally*, in *Wheatland Tube*, because section 201 safeguard and antidumping duties effectively treat the same injury, Commerce found that deducting Section 201 duties from United States price could improperly result in the collection of Section 201 duties twice.  495 F.3d at 1362-63.  As explained by Commerce in *Stainless Steel Wire Rod from Korea*, the Statement of Administrative Action accompanying the 1921 Act states that "{i}n determining whether to provide {Section 201} relief, and, if so, in what amount, the President will continue the practice of taking into account relief provided under other provisions of law, such as the antidumping" law.  69 Fed. Reg. at 19,160 (quoting Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, at 964 (1994) reprinted in 1994 U.S.C.C.A.N. 3773).  Congress explicitly intended that the President would take into account any potential overlap between Section 201 and antidumping duties when setting the level of Section 201 duties.  *Id.*

In contrast, there is no similar authority demonstrating Congress's intent that the President would take into account potential overlap between Section 232 and antidumping duties.  In this case, the President directed that Section 232 duties should be applied in addition

19

to "any other duties, fees, exactions, and charges applicable to such imported steel articles{.}" *Proclamation 9705*, clause 2.  The Federal Circuit recently acknowledged that the President's Section 232 tariffs are to be applied "on top of already-applicable antidumping or countervailing duties."  *See Am. Inst. for Int'l Steel, Inc. v. United States*, 806 F. App'x. 982, 986 (Fed. Cir. 2020).  Commerce was properly concerned about double-counting in *Wheatland Tube* because the legislative history indicated that Congress intended the President to take antidumping duties into account when setting Section 201 duties.  No similar concerns are present here.

Commerce determined that "the function of antidumping duties and section 232 duties is separate and distinct, such that there would be no overlap between the two in providing remedies sought by each."  IDM at 12.  Section 232 duties are not limited to addressing injury, material or otherwise, to the relevant domestic industry caused by imports.  *See* 19 U.S.C. § 1862.  The focus of Section 232 duties is much different in that it addresses "the capacity of the United States to meet national security requirements."  *Id.*  Unlike the similarity in purpose and function of antidumping and Section 201 duties, Section 232 actions to "adjust imports" are not limited to addressing the injury to industries caused by import surges or unfairly traded imports.

This Court in *Borusan* agreed with Commerce that "{t}here is a clear statutory interplay between Section 201 duties and antidumping duties, while Section 232 does not reveal any such coordination concerns."  *Borusan*, 494 F. Supp. 3d at 1375-76.  Power Steel does not provide any arguments rebutting Commerce's double-counting analysis.

Instead, without providing any legal support, Power Steel argues that Section 232 duties are special duties because they were delegated to the President by Congress.  Pl. Br. at 16-17.  It is not dispositive that Congress expressly delegated to the President the authority to impose Section 232 duties when national security concerns arise.  *See* 19 U.S.C § 1862.  If Power Steel

were right, then *all* statutes granting the President power to impose duties would suddenly be removed from section 1677a(c)(2)(A)'s reach.  There is no evidence in either the statute's text or legislative history to support such a sweeping claim.

Commerce's interpretation of "United States import duties" to include Section 232 duties is reasonable and in accordance with law because it is consistent with the text of the statute, the President's proclamation, and *Wheatland Tube.*

### C. Commerce's Determination That Power Steel Paid Section 232 Duties On All United States Sales Is Supported By Substantial Evidence And In Accordance With Law

Commerce's decision to deduct Section 232 duties from all Power Steel's United States sales entered after March 23, 2018, is based on substantial record evidence and is in accordance with law.

In response to Commerce's initial questionnaires, Power Steel reported that it "acted as importer of record and paid normal U.S. Customs duties, as well as antidumping duty deposits, and special Section 232 duties (for applicable sales){.}"  Power Steel March 14, 2019 Response (C.R. 13) at 14.  Power Steel also reported that for sales that were entered on or after March 23, 2018, "the U.S. sales price includes the 25 percent tariff imposed on certain steel products, including rebar, pursuant to Section 232{.}"  *Id.* at 49.  Additionally, in response to a supplemental questionnaire in which Commerce asked Power Steel how it determines terms of delivery for its sales, Power Steel reported that "{b}ased on its long-term relationships with its export market {customers}, {Power Steel} normally negotiates terms based on each customer's particular requirements…Where, DDP {Delivery Duty Paid} = Antidumping Duty  + Section 232 Tariff + normal customs duties."  IDM at 16 (citing Power Steel September 3, 2019 Response (C.R. 41) at 17).

In the Preliminary Results, Commerce found that Power Steel paid Section 232 duties on merchandise entered after March 23, 2018, and based on its determination that Section 232 duties should be treated as United States import duties, Commerce deducted Section 232 duties from all of Power Steel's United States sales.  *See* PDM at 8; Preliminary Analysis Memorandum (C.R. 82) at 3.  Commerce indicated that it intended to issue a supplemental questionnaire for further information regarding Power Steel's payment of Section 232 duties.  *Id.*

Shortly thereafter, Commerce issued a supplemental questionnaire to Power Steel asking several questions about the Section 232 duties it reported paying.  Fourth Supp. Questionnaire (P.R. 89).

In response, Power Steel submitted evidence in the form of a revised contract and email documentation that ostensibly showed that United States parties—not Power Steel—paid Section 232 duties for some transactions.  Power Steel January 9, 2020 Response (C.R. 86) at Exhibits 4 and 5; Final Analysis Memorandum (C.R. 98) at 7-8.  Commerce analyzed the evidence and determined that it did not demonstrate that Power Steel did not pay the duties in question.  *Id.* at 7.  Thus, in the Final Results, Commerce continued to deduct Section 232 duties from all of Power Steel's United States sales.  IDM at 16.

Power Steel argues that Commerce did not ask Power Steel follow-up questions about Section 232 duties until after the Preliminary Results were issued.  Pl. Br. at 18-25.  It is unclear what Power Steel is complaining about in this regard.  Preliminary results are *preliminary*; it is customary for Commerce to issue supplemental questionnaires in administrative reviews before issuing its Final Results.  Although petitioner asked Commerce to apply adverse facts available (AFA) to Power Steel's United States price, Commerce did not do so.  *See* IDM at 14.  Thus,

Power Steel was not "penalized"[8] in any way.  *Se* Pl. Br. at 21.  Rather, the information Power

Steel submitted in response to Commerce's supplemental questionnaire was insufficient.  Power

Steel was given the opportunity to submit information showing that Commerce's preliminary

calculations were incorrect, but the evidence Power Steel submitted failed to do so.  It is well

settled that the "burden of creating an adequate record lies with interested parties and not with

Commerce."  *QVC Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)

(internal quotation marks, brackets, and citations omitted); *see also Nan Ya Plastics Corp., Ltd.

v. United States*, 810 F.3d 1333 (Fed. Cir. 2016).

    Power Steel also argues that its supplemental responses demonstrate that it did not pay

Section 232 duties on some entries.  Pl. Br. at 25-31.  However, Commerce analyzed the

information Power Steel submitted and found that it did not demonstrate that Power Steel did not

pay the Section 232 duties in question.  IDM at 16; Final Analysis Memorandum at 7-8.  With

regard to the sales contract, Power Steel claimed in its case brief that the sales agreement

between Power Steel and its United States customer indicated that the United States customer or

ultimate consignee, not Power Steel, would take responsibility of the Section 232 duties.  Final

Analysis Memorandum (C.R. 98) at 7-8.  But Commerce reasonably observed that the revised

sales contract was actually the original contract with a *handwritten* revision to the terms

regarding Section 232 duties.  *Id.*  The handwritten revision was not signed, initialed, or dated; it

simply scratched out Power Steel's name.  *See* Power Steel January 9, 2020 Response (C.R. 86)

---

[8] Of course, even if Commerce had applied AFA to Power Steel's United States price,
Commerce would not be "penalizing" Power Steel.  The purpose of AFA is "to provide
respondents with an incentive to cooperate, not to impose punitive, aberrational, or
uncorroborated margins."  *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
216 F.3d 1027, 1032 (Fed. Cir. 2000).

at Exhibit 5. Commerce did not consider this handwritten revision to demonstrate that some of

the Section 232 duties were not paid by Power Steel. Final Analysis Memorandum (C.R. 98) at

7-8.

Power Steel argues that Commerce should have conducted an analysis of the legal

validity of the handwritten revision, and that, at best, Commerce's analysis of the revised

contract was inconclusive. Pl. Br. at 26-27. Power Steel is wrong. Because the burden of

creating an adequate record rested with Power Steel, it was Power Steel's obligation to submit

such an analysis. *See QVC Food Co., Ltd.*, 658 F.3d at 1324. If Power Steel wanted to

demonstrate that someone else paid some of the Section 232 duties, it should have provided

additional information supporting its claim. It is hardly unreasonable for Commerce to decline

to rely on a handwritten revision scratching out Power Steel's name as the party responsible for

paying the duties. And Power Steel's argument that Commerce's analysis was "inconclusive"

only serves to further bolster Commerce's determination that the revised sales contract did not

demonstrate that Power Steel did not pay the Section 232 duties.

Commerce similarly found that the email correspondence did not demonstrate that Power

Steel did not pay the Section 232 duties. Final Analysis Memorandum (C.R. 98) at 8. In its

supplemental questionnaire response, Power Steel claimed that the email correspondence with its

United States customer indicates that the payment of Section 232 duties was to be made by the

ultimate consignee. *Id.*; *see also* Power Steel January 9, 2020 Response (C.R. 86) at Exhibit 4.

However, Commerce explained that

> The email communications submitted by Power Steel are fragmented
> communications between Power Steel, its U.S. customer, and its U.S.
> broker. Notably, the ultimate consignee, the party that allegedly paid the
> section 232 duties, is not included on any of the email communications.
> Further, the email communications include a request from Power Steel to
> its U.S. customer that the section 232 duties be paid by the ultimate

24

consignee.  One email from Power Steel's U.S. broker has the subject line
"Re:  Wire payment," and email content: "Received," but the email in
question does not indicate what wire payment was received, from whom,
or for what?  *Power Steel's supporting documentation does not include
bank or payment documentation demonstrating that any party paid the
section 232 duties in question.  Further, there is no acknowledgment on
the record of this review that the ultimate consignee intended to pay or
ultimately paid the section 232 duties*.

Final Analysis Memorandum at 8 (emphasis added).  Thus, the email correspondence submitted

by Power Steel did not demonstrate that the Section 232 duties were paid by someone other than

the importer of record (Power Steel).  *Id.*

Power Steel contends that Commerce improperly faults it for not providing supporting

documentation that Commerce did not request in the first place.  Pl. Br. at 27-31.  Again, Power

Steel was indisputably given the opportunity to submit supplemental information before the Final

Results were issued.  Power Steel then submitted additional information (*e.g.,* the "revised" sales

contract and email correspondence).  Power Steel January 9, 2020 Response (C.R. 86).

Commerce must base its decisions on the record.  "With respect to data within their control, the

burden rests on the interested parties 'to create an accurate record during Commerce's

investigation.'" *Yama Ribbons & Bows Co. v. United States*, 865 F. Supp. 2d 1294, 1298 (Ct.

Int'l Trade 2012) (quoting *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir.

2012)).  Power Steel was on notice from the Preliminary Results that Commerce was deducting

Section 232 duties from all of its United States sales, and it was incumbent on Power Steel to

submit sufficient, reliable information showing that Commerce's calculations were inaccurate.

The email correspondence Power Steel submitted did not confirm that the ultimate

consignee in fact made the Section 232 duty payments, and although there was one email

indicating that a wire payment was made, Commerce observed that the email in question did not

indicate what the wire payment was for, or who made the payment.  Final Analysis

Memorandum (C.R. 98) at 8.  Thus, Commerce reasonably determined that the email correspondence did not substantiate Power Steel's claim that Power Steel did not pay Section 232 duties for some sales.

Power Steel argues that even if the Court agrees that there is insufficient record evidence to demonstrate another party paid the Section 232 duties in question, the record similarly does not demonstrate that Power Steel paid the Section 232 duties.  Pl. Br. at 32.  Power Steel cites to its accounting records and reconciliation worksheet it submitted in its supplemental response to argue that it did not pay Section 232 duties for some entries.  *Id*. at 32-34.  Power Steel is wrong.  Substantial evidence supports Commerce's determination that Power Steel paid Section 232 duties for all of its sales.

As Power Steel states in its brief before this Court, it "acknowledged categorically that it was the importer of record of its U.S. sales transactions and *was responsible for paying duties owed at the time of entry, including normal duties, {antidumping} duties, and Section 232 duties*."  *See* Pl. Br. at 19 (citing Power Steel March 14 Response (C.R. 13) at 14 (emphasis added).  Power Steel explicitly reported that "{b}ased on its long-term relationships with its export market {customers}, {Power Steel} normally negotiates terms based on each customer's particular requirements…Where, DDP {Delivery Duty Paid} = Antidumping Duty  + Section 232 Tariff + normal customs duties."  IDM at 16 (citing Power Steel September 3, 2019 Response (C.R. 41) at 17.  Power Steel's responses thus indicate that (1) it is the importer of record for all of its United States sales, (2) it was responsible for paying, and paid, Section 232 duties, and (3) it customarily negotiates a price that includes Section 232 duties.

The new information Power Steel submitted after the Preliminary Results did not demonstrate otherwise.  Relying on a contract with unverified, handwritten revisions and email

documentation that did not actually demonstrate that another party paid the Section 232 duties in question, Power Steel unsuccessfully argued that United States parties paid some of the duties. Final Analysis Memorandum (C.R. 98) at 7-8.  Now Power Steel claims that even if it cannot demonstrate *who* paid the duties, Commerce is nonetheless unreasonable in determining that Power Steel paid the duties.  Pl. Br. at 32-33.  But the antidumping statute *requires* Commerce to deduct import duties from Power Steel's United States Price *unless* Power Steel can demonstrate that such a deduction is improper.  *See* § 1677a(c)(2)(A).

Power Steel is the importer of record responsible for paying Section 232 duties and its initial responses indicate that it customarily negotiates prices that include Section 232 duties. "Clearly, it is within Commerce's discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence." *Hercules, Inc. v. United States*, 673 F. Supp. 454, 466 (Ct. Int'l Trade 1987) (citation and quotation omitted); *Corus Staal BV v. U.S. Dep't of Com.*, 259 F.Supp.2d 1253, 1260 (Ct. Int'l Trade 2003) ("It is ultimately Commerce's responsibility to weigh the evidence{.}").  Power Steel was given the opportunity to show who, other than Power Steel, paid some of the duties. When Power Steel failed to submit record evidence to support its claim, it was not unreasonable for Commerce to conclude —consistent with Power Steel's initial questionnaire responses—that Power Steel paid Section 232 duties for all of its United States sales.  *See Shijiazhuang Goodman Trading Co. v. United States*, 172 F. Supp. 3d 1363, 1378 (Ct. Int'l Trade 2016) (Commerce may draw reasonable inferences from record evidence).

At best, the record evidence is conflicting, and the Court should not overturn Commerce's determination "simply because the reviewing court would have reached a different conclusion based on the same record."  *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed.

Cir. 2007); *see Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (the court may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though it could justifiably have made a different choice had the matter been before it *de novo*).  Commerce's determination that Power Steel paid Section 232 duties for its United States sales, which was based on Power Steel's submissions on the record, is supported by substantial evidence and in accordance with law.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment on the agency record and sustain Commerce's Final Results.

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Prehim
L. MISHA PREHEIM
Assistant Director

/s/ Ann C. Motto

OF COUNSEL:                                           ANN C. MOTTO
ELIO GONZALEZ                                      Trial Attorney
Senior Attorney                                         U.S. Department of Justice
Office of the Chief Counsel                        Civil Division
for Trade Enforcement and Compliance     Commercial Litigation Branch
U.S. Department of Commerce                    P.O. Box 480
Washington, D.C.                                       Ben Franklin Station
                                                                  Washington, D.C. 20044
                                                                  Tel: (202) 353-7968
                                                                  Fax: (202) 305-2062
                                                                  Email: Ann.C.Motto@usdoj.gov

June 8, 2021                                              *Attorneys for Defendant United States*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| POWER STEEL CO., LTD.,          ) | |
|          ) | |
|       Plaintiff,     ) | |
|          ) | |
|     v.         ) | Court No. 20-03771 |
|          ) | |
| UNITED STATES,        ) | |

POWER STEEL CO., LTD.,                )
                                      )
              Plaintiff,              )
                                      )
       v.                             )        Court No. 20-03771
                                      )
UNITED STATES,                        )
                                      )
              Defendant,              )
and                                   )
                                      )
REBAR TRADE ACTION COALITION,         )
                                      )
              Defendant-Intervenor.   )
                                      )

### ORDER

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____          _____

New York, New York                                    Judge