Slip Op. 21-173

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POWER STEEL CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. <br><br> REBAR TRADE ACTION COALITION, <br><br> Defendant-Intervenor. | Before: Jane A. Restani, Judge <br><br> Court No. 20-03771 |

OPINION

[Antidumping Duty Determination in Review of Order on Steel Concrete Reinforcing Bar from Taiwan. Remanded.]

Dated: December 23, 2021

    Adams C. Lee, Harris Bricken McVay Sliwoski LLP, of Seattle, WA, argued for Plaintiff Power Steel Co., Ltd.

    Ann C. Motto, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for the Defendant. Of counsel on the brief was Elio Gonzalez, Senior Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

    Maureen E. Thorson, Wiley Rein LLP, of Washington, D.C., argued for Defendant-Intervenors Rebar Trade Action Coalition. With her on brief were Alan H. Price and John R. Shane.

    Restani, Judge: Before the court is a motion for judgment on the agency record pursuant to the United States Court of International Trade ("USCIT") Rule 56.2, in an action challenging a final determination of the United States Department of Commerce ("Commerce"). The final determination at issue results from Commerce's findings during an administrative review of the

antidumping ("AD") order covering steel concrete reinforcing bar ("rebar") from Taiwan. See Steel Concrete Reinforcing Bar from Taiwan, 85 Fed. Reg. 63,505 (Dep't Commerce Oct. 8, 2020) ("Final Results"); see also Issues and Decision Memorandum for the Final Results of the 2017-2018 Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Taiwan, A-583-859, POR 3/7/17–9/30/2018 (Dept' of Commerce October 2, 2020) ("Final I&D Memo"). Plaintiff Power Steel Co. Ltd. ("Plaintiff" or "Power Steel") argues that Commerce's deduction of Section 232 duties from the United States export price ("EP") was not supported by substantial evidence or in accordance with law. See Pl. Power Steel Br. In Supp. of its Mot. for J. on the Agency R. at 8–17, ECF. No. 24 (March 25, 2021) ("Pl. Br."). Plaintiff also challenges Commerce's determination that Power Steel paid Section 232 duties for all its United States sales. See id. at 18–24.

## BACKGROUND

a. **Antidumping Administrative Review and Determination**

In December 2019, Commerce initiated an administrative review of the antidumping duty order covering rebar from Taiwan for the period of review of March 7, 2017, through September 20, 2018. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 83 Fed. Reg. 63,615 (Dep't Commerce Jul. 12, 2018). Commerce published the preliminary results of its review in December 2019. Steel Concrete Reinforcing Bar from Taiwan: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2017-2018, 84 Fed. Reg. 68,884 (Dep't Commerce Dec. 17, 2019) ("Preliminary Results"); Decision Memorandum for the Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review: Steel Concrete Reinforcing Bar from Taiwan; 2017-2018, A-583-859, POR 3/7/2017-9/30/2018

(Dep't Commerce Dec. 10, 2019) ("PDM").  Commerce issued the Final Results on October 8, 2020, resulting in a 3.27% dumping margin for Power Steel.  Final Results, 85 Fed. Reg. at 63,505.

      **b.**      **Treatment of Section 232 Duties**

In March 2018, the President mandated the imposition of a global tariff of 25 percent on imports of steel articles from all countries, except Canada and Mexico, exercising his authority under Section 232 of the Trade Expansion Act of 1962, as amended.  Proclamation No. 9705 of March 8, 2018, 83 Fed. Reg. 11,625, 11,626 (Mar. 15, 2018) ("Proclamation 9705").  Section 232 empowers the President and Commerce to take action to ensure that the importation of an article "will not threaten to impair the national security."  See Trade Expansion Act of 1962, Pub. No. L. 87-794, § 232 (codified as amended at 19 U.S.C. § 1862); 19 U.S.C. § 1862(c)(1)(A).  The statute authorizes the President to consider "domestic production needed for projected national defense requirements," and to "determin[e] whether such weakening of our internal economy may impair national security."  19 U.S.C. § 1862(d).

The Section 232 duties went into effect on March 23, 2018, and applied "in addition to any other dut[y]."  Id. at 11,627–28.  Proclamation 9705 sought to "enable domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby achieve long-term economic viability through increased production" and to "ensure that domestic producers can continue to supply all the steel necessary for critical industries and national defense."  See id. at 11,625–26; see also 19 U.S.C. § 1862(d).

In the December 2019 Preliminary Results, Commerce treated the Section 232 duties paid by Power Steel as "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A) and

therefore deducted the Section 232 duties on the United States price side of the dumping comparison from Power Steel's EP. Prelim Analysis Memo at 3–4, C.R. 82, P.R. 87, (Dec. 13, 2019). Power Steel argued that Commerce should not deduct Section 232 duties because the duties were special duties, not "normal U.S. Customs Duties." Power Steel Submission of Case Br. at 2–9, C.R. 92, P.R. 97 (Jan. 24, 2020). In its final Decision Memorandum, Commerce determined that Section 232 duties were more akin to normal customs duties than to antidumping or countervailing ("AD/CV") duties, codified as 19 U.S.C. §§ 1671, 1673, or Section 201 duties, codified as 18 U.S.C. § 2251, which it does not deduct from EP. Final I & D Memo at 10–13. Commerce explained that the President implemented the Section 232 duties to address national security concerns and found that Section 232 duties differed from antidumping or Section 201 duties because they did not focus on remedying injury to a domestic industry, were concerned with national security, and did not reduce the antidumping duties owed. Id.

  **c. Challenge to Review Determination**

On October 19, 2020, Power Steel commenced the instant action against the United States pursuant to 19 U.S.C. § 1516a(a)(2). Compl., ECF No. 5 (Oct. 19, 2020). Power Steel claims the AD determination is unsupported by substantial evidence or is otherwise contrary to law because Commerce incorrectly treated Section 232 duties as normal U.S. customs duties. Compl. ¶¶ 18-19; Pls. Br. at 10–17. Power Steel further argues that Commerce's decision to deduct Section 232 duties from the EP of all of Power Steel's U.S. sales was not supported by substantial evidence and was otherwise not in accordance with law because Power Steel did not pay the Section 232 duties on certain sales. Compl. ¶¶ 20–21; Pls. Br. at 18–34.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2). The court sustains Commerce's results of an administrative review of an AD duty order unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Section 232 Duty Duties May Be Deducted from United States Price

Under section 772(c) of the Tariff Act of 1930, EP and constructed export price ("CEP") are to be reduced by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States . . ." 19 U.S.C. § 1677a(c)(2)(A) (emphasis added).

When Congress has directly spoken to the precise question at issue, it ends the matter— "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984); Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007). Where, as here, the statute is silent or ambiguous with respect to the specific issue, then the court must evaluate whether Commerce's interpretation "is based on a permissible construction of the statute" and inquire into the "the reasonableness of Commerce's interpretation." Chevron, 467 U.S. at 843; NSK Ltd. v. United States, 26 CIT 650, 654, 217 F. Supp. 2d 1291, 1296 (2002).

Commerce previously issued an interpretation of the phrase "United States import duties" with regard to the deductibility of Section 201 safeguard duties, 19 U.S.C. § 2251, and concluded

Court No. 20-03771                                                                                                          Page 6

Section 201 duties should not be deducted as "import duties."  Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review, 69 Fed. Reg. 19,153, 19,159–61 (Dep't Commerce Apr. 12, 2004).  Commerce relied on the legislative history of the Antidumping Act of 1921 to conclude that there is a distinction between certain "special dumping duties" and "normal customs duties" (also referred to as "United States import duties").  Id. at 19,159 (citing S. Rep. No. 67-16, at 4 (1921)) (emphasis added).  The Federal Circuit stated that the phrase "United States import duties" is an ambiguous phrase in the statute and upheld as reasonable Commerce's interpretation that Section 201 safeguard duties are not "United States import duties."  Wheatland Tube, 495 F.3d at 1359–60.

       This court recently held that Commerce did not err in treating Section 232 duties as "United States import duties" that are deducted from the EP under 19 U.S.C. § 1677a.  Borusan Mannesmann Boru Sanayi v. Ticaret A.S., 45 CIT __, __, 494 F. Supp. 3d 1365, 1376 ( 2021).  The court stated that it was reasonable for Commerce to treat Section 232 duties differently from Section 201 duties because Section 201 duties were more similar to antidumping duties and that there was "an interplay between antidumping duties and Section 201 duties, which [was] not present with Section 232 duties."  Id.  The court reasoned that antidumping duties continue after the President imposes Section 232 duties while prior to imposition of Section 201 duties consideration must be given to "internationally accepted remedies for unfair trade practices," including antidumping duties.  Id. at 1375.  Thus, the court held that there was no "impermissible double counting" when it came to Section 232 duties because the statutory term "import duties" was broad enough to include "all import duties except antidumping duties."  Id. at 1375–76.  While the deduction of antidumping duties presents a circularity problem, deducting Section 232

duties merely takes EP and CEP back to a level for better comparison to normal value. Id. at 1372-73.

     Here, Power Steel has not shown reason to reject the court's prior decision in Borusan. Power Steel suggests that Section 232 duties are "special duties" because they are remedial and temporary in nature. Pls. Br. at 14–15. Power Steel acknowledges, however, that this court considered these issues in Borusan, and only argues that this court's decision "was in error." See id. at 17; Borusan, 494 F. Supp. at 1374–75. Power Steel raises a unique argument that Section 232 duties are "special duties" because the President enacts the duties through "specific and limited" congressional authorization for national security purposes while only Congress can enact "normal custom duties" through Article I of the U.S. Constitution. See Power Steel Br. at 16-17; Power Steel Reply Br. at 1–7. This argument is in error. As recognized by the Federal Circuit, the phrase "United States import duty" is ambiguous, and Commerce's reasonable interpretation of its meaning is entitled to deference. See Wheatland Tube, 495 F.3d at 1359–60. The statute contains no language and has no legislative history that limits "United States import duties" to only those duties enacted by Congress as opposed to import duties imposed by the President for national security reasons, pursuant to Congressional authorization, as is the case with Section 232 duties. See 19 U.S.C. § 1677a(c)(2)(A); 19 U.S.C. § 1862. Thus, nothing in the statute renders Commerce's interpretation that Section 232 duties are "United States import duties" impermissible. See 19 U.S.C. § 1677a(c)(2)(A); Chevron, 467 U.S. at 843. Accordingly, the court sustains Commerce's decision that the EP may be reduced by Section 232 duties paid.

### II. The Court Remands to Commerce to Consider Record Evidence of Non-Payment of Section 232 Duties

The second issue before the court is whether Commerce's determination that Power Steel paid Section 232 duties for all U.S. sales during the relevant period is supported by substantial evidence and in accordance with law.

Prior to the Preliminary Results, Power Steel consistently reported that it was the importer of record and paid Section 232 duties for its U.S. sales.  See e.g., Power Steel March 14, 2019 Section C Questionnaire Response at 14, C.R. 13, P.R. 33 (March 14, 2019) (reporting in response to Commerce's initial questionnaire that Power Steel was importer of record and paid "special Section 232 duties" ((for applicable sales))).  In the December 13, 2019, Preliminary Results, Commerce found that Power Steel paid Section 232 duties on merchandise entered after March 23, 2018, and deducted Section 232 duties from all of Power Steel's U.S. sales.  See Preliminary Analysis Memo at 3, C.R. 82, P.R. 87, (Dec. 13, 2019); see also PDM at 8.

Following the Preliminary Results, Power Steel claimed that it did not pay Section 232 duties for certain transactions and that these duties were rather paid by United States parties.  See Power Steel 4th Supplemental Questionnaire Response at 1–3, C.R. 86, P.R. 93 (Jan. 9, 2020).  In support for this claim, Power Steel submitted a revised sales agreement, email correspondence, accounting records, and other documentary evidence that it claimed demonstrated that other parties paid the Section 232 duties for the disputed transactions.  See 4th Supplemental Questionnaire Response at Exs. 1–8.  Commerce analyzed the email correspondence and revised sales agreement and found that Power Steel failed to demonstrate that it did not pay the disputed Section 232 duties.  Final I&D Memo at 16; Final Calculation

Memo at 8, C.R. 98, P.R. 131 (Oct. 2, 2020). Commerce thus continued to deduct Section 232 duties from all of Power Steel's U.S. sales during the relevant period. Final I&D Memo at 15.

Power Steel initially argued before the court that Commerce's finding that Power Steel paid Section 232 duties for all U.S. sales was not supported by substantial evidence because Commerce failed to consider properly the revised sales agreement and email correspondence, and the record does not demonstrate that Power Steel actually paid the duties in question. Pl. Br. at 18–34. Commerce argued in response that it reasonably determined that Power Steel paid Section 232 duties for all its U.S. sales. Def. Br. in Resp. to Mot. for J. on Agency R. at 21–28. Neither party in briefing or oral argument, however, explained by citation to the record what demonstrated the exclusion or inclusion of Section 232 duties in the base EP to which adjustments are made under 19 U.S.C. § 1677a. The court ordered the parties to provide additional information of record, including any sales invoices associated with U.S. Customs and Border Protection 7501 forms ("CBP 7501") for the disputed transactions. See Order for Further Information, ECF No. 39 (Oct. 22, 2021).

Power Steel now argues, in response to the court's order, that the sales invoices and CBP 7501 entry documents provide further support for the argument that Power Steel did not pay the Section 232 duties for the disputed transactions, because Section 232 duties were not included in the gross unit price that was the basis for Commerce's EP. See Pl. Public Response to Court's Oct. 22 Questions at 3, ECF No. 43 (Nov. 10, 2021). Power Steel submitted two sales invoices in support of this position; only one invoice, however, was submitted on the administrative record of this review. See id. at Ex. 1–2; see also Power Steel's February 21 Section A Response

Court No. 20-03771                                                                                                    Page 10

at Ex. A-7(1).  The second sales invoice was submitted contrary to the court's instructions and is not considered to be of record here.

Power Steel had the burden of creating a complete and accurate record before Commerce. Yama Ribbons & Bows Co. v. United States, 36 C.I.T. 1250, 1253, 865 F. Supp. 2d 1294, 1298 (Ct. Int'l Trade 2012) (quoting Essar Steel Ltd. v. United States, 678 F.3d 1268, 1277 (Fed. Cir. 2012)) (stating that "[w]ith respect to data within their control, the burden rests on the interested parties 'to create an accurate record during Commerce's investigation.'")  Here, Power Steel was on notice that Commerce was deducting Section 232 duties from all its U.S. sales.  See Preliminary Analysis Memo at 3; see also PDM at 8.  Power Steel had an opportunity to submit all relevant sales invoices and other documents in its response to Commerce's questionnaire following the Preliminary Results but submitted other information that it claimed showed Power Steel did not pay the Section 232 duties for the disputed transactions.  See 4th Supplemental Questionnaire Response at Exs. 1–8.  Power Steel did not argue before Commerce specifically that the sales invoices at issue demonstrated non-payment of Section 232 duties and Commerce does not seem to have considered whether the sales invoice in the record demonstrated non-payment by Power Steel.  See, e.g., Final I&D Memo at 13–16; Final Calculation Memo at 2–8; Power Steel Case Brief, C.R. 92, P.R. 97 (Jan. 24, 2020).

The documentary evidence that Power Steel initially argued was evidence of its non-payment of Section 232 duties for certain transactions appears to be ambiguous if considered in a vacuum.  See 4th Supplemental Questionnaire Response at Exs. 1–8.  It appears, however, that the sales invoices that Power Steel submitted in response to the court's October 22 order may show that Power Steel did not pay the Section 232 duties for the disputed transactions and that

therefore they were not part of the sales price used to establish base EP.  See Pl. Public Response to Court's Oct. 22 Question at 1–10, Ex. 1–2.  As the administrative record contained one such sales invoice, the court remands to Commerce to consider whether the sales invoice of record and other record evidence sufficiently demonstrate Power Steel's non-payment of Section 232 duties for this entry.  See id.  If, on remand, Commerce declines to remove the adjustment to the U.S. price for the relevant sale, it must explain its analysis of the record evidence as a whole, including the sales invoice.  Commerce, in its discretion, may choose to reopen the record to consider on remand the non-record sales invoice and other documents not originally submitted in the administrative record.  It may also conclude that the one sales invoice of record together with the other evidence of record informs its view of all of the disputed transactions.

## CONCLUSION

The court sustains Commerce's determination regarding the deduction of Section 232 duties.  The matter is remanded for consideration of the sales invoice at issue that is on the record and for whatever other action Commerce considers appropriate.  The remand determination shall be issued within 60 days hereof.  Comments may be filed 30 days thereafter and any response 15 days thereafter.  SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　/s/　　  Jane A. Restani　　　　
　　　　　　　　　　　　　　　　　　　　　　　　Jane A. Restani. Judge

Dated: December 23, 2021　　　　　　　
　　　　New York, New York